**UNITED STATES of America**

v.

**Galveston MORRIS a/k/a Sonny.**

Crim. No. 23175.

United States District Court
E. D. Pennsylvania.

Jan. 15, 1970.

Victor Wright, Asst. U. S. Atty., E. D. Pennsylvania, for plaintiff.

Milton Leidner, Bernard Segal, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

The defendant in this case was apprehended in Philadelphia on January 17, 1968, and was charged with having illegally sold heroin on May 2, 1967. The defendant's arrest effectively closed what had been an extensive undercover investigation by both State and Federal

agents into a narcotics ring, of which the defendant was the reputed head. At a trial before a jury, the defendant was found guilty of a sale of narcotics in violation of 26 U.S.C. § 4704(a). Presently before this Court is defendant's Motion for a New Trial and a Motion to Quash the Indictment.

## MOTION FOR A NEW TRIAL

In support of his Motion for a New Trial, the defendant alleged the following grounds:

(1) the verdict was against the evidence;

(2) the verdict was against the weight of the evidence;

(3) the verdict was against the law;

(4) the trial court erred in over-ruling the defendant's motion for judgment of acquittal;[1]

(5) the court committed error in failing to grant the defendant a pre-trial hearing on his motion to dismiss the indictment; further, the court erred in denying the defendant's pre-trial motion to dismiss.

### I.

Initially, we will consider defendant's claim that a new trial should be granted because the verdict was against the evidence and also against the weight of the evidence. On a motion for a new trial, the court may weigh the evidence and consider the credibility of witnesses. Indeed, it has been said that on such a motion the court sits as a "thirteenth juror". Wright, Federal Practice and Procedure, § 553. If the court reaches the conclusion that the verdict is contrary to the evidence, or its weight, and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted. Suffice it to say that after reviewing the evidence on

both sides and assessing the credibility of the witnesses, we find that the verdict was fully justified by the evidence.

### II.

Defendant also avers that a new trial should be granted in that the verdict was against the law. The motion does not specifically allege what legal errors were committed. However, in his Memorandum in Support of the Motion, the defendant states that the court erred in its charge relating to the "interest in the outcome" of the litigation as regards the defendant and the informer. (N.T.T. pp. 401–403). This, we assume, is the basis for the defendant's assignment of legal error.

Fatal to the defendant's objection is Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C., which provides, in pertinent part, that:

" * * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

Here, the defendant failed to object to the charge before the jury retired to consider its verdict, even though the court provided a suitable opportunity for counsel to make specific objections. (See N.T.T. pp. 416–417). This would normally be enough to allow us to find against the defendant. However, we are aware that our own Circuit Court of Appeals has cautioned against applying the technicalities of Rule 30 so "woodenly" as to cause it to become "a trap for the unwary."[2] United States v. Currens, 290 F.2d 751 (3rd Cir. 1961). In this spirit, then, we will read the requirements of a Rule 30 objection in connection with Rule 52(b), Federal Rules of Criminal Procedure, which al-

---

1. This refers to the motion made by the defendant after the close of all the evidence and before the jury was charged. Notes of Trial Testimony, pp. 352–353. (Hereinafter, Notes of Trial Testimony will be cited as "N.T.T.").

2. We note that defendant's able and experienced trial counsel can hardly be characterized as "unwary."

lows plain errors or defects affecting substantial rights to be considered although they were not timely brought to the attention of the trial court. Wright, Federal Practice and Procedure, § 484.

In assigning error, the defendant points to the Court's following language in discussing the "interest" of the informer, George Payne:

> "Payne, it is difficult to see how he would have a technical interest in the outcome of the case. He is a prisoner. He was a professional informer. You will just have to use your judgment in assessing his credibility." (N.T.T. p. 402).

The defendant now asserts that the above language obscured possible motives for Payne to give false testimony incriminating the defendant. It is argued, for example, that Payne might have been motivated by the expectation of favorable consideration by the government for early release from the Federal penitentiary. We do not find the above argument compelling for the language of our charge does not preclude any finding of interest on the informer's part. We merely state that it is not readily apparent and that the jurors should use their own judgment in this matter. This we find to be within appropriate grounds of judicial comment and instruction.

 Nor do we find prejudicial our statements as to the defendant's interest in the outcome of the case. We merely stated the obvious—that the defendant has an interest in not being convicted. (N.T.T. p. 402). Defendant now complains that this was neither fair nor balanced, in that we failed to state that not all defendants are ultimately found guilty and that the jury should have been instructed that Morris had an interest of a possibly innocent man. This objection by the defendant we find specious at best, especially when read in light of our charge as to the presumption of

the defendant's innocence. (N.T.T. pp. 416–417).

Thus, we conclude, that defendant's assignment of error regarding the Court's charge is lacking in merit. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.

### III.

 We next turn to defendant's contention that the Court erred in denying the motion for judgment of acquittal, which was made at the close of all the evidence and before the jury was charged. (N.T.T. pp. 352–353). The standard by which the court is to be guided in passing on a motion for judgment of acquittal is whether, taking the view most favorable to the government, United States v. Giuliano, 263 F.2d 582, 584 (3rd Cir. 1959), the evidence is "insufficient to sustain a conviction." Rule 29(a), Federal Rules of Criminal Procedure. "The question is whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt." United States v. Allard, 240 F.2d 840, 841 (3rd Cir. 1957); cert. denied, Fishman v. United States, 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761 (1957). However, in passing on this question, we recognize that our powers are not as broad as when we consider a motion for a new trial, for it is not for a judge, ruling on a motion for judgment of acquittal, to assess the credibility of witnesses, weigh the evidence, or draw inference of fact from the evidence. These are functions of the jury. United States v. Saka, 339 F.2d 541 (3rd Cir. 1964); Wright, Federal Practice and Procedure, §§ 467, 553. With these limitations in mind, we have reviewed the evidence and have concluded that our denial of the defendant's motion for judgment of acquittal was proper.[3]

---

3. To the extent that the defendant's motion for a new trial can be read as renewing a motion for a judgment of acquittal, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, it is similarly denied.

## IV.

Before the trial commenced, defendant's counsel made a preliminary motion for the dismissal of the indictment on the basis of Ross v. United States, 121 U.S. App.D.C. 233, 349 F.2d 210 (1965). In *Ross,* the Circuit Court overturned a conviction for narcotics violation on the ground of denial of due process because of their finding that the defendant was unable to adequately defend himself. The complaint against the defendant there was not sworn out until 7 months after the alleged offense, although the defendant was continuously available for arrest during this period. Apart from the narcotics, the prosecution's case consisted solely of a policeman's testimony that he had purchased narcotics from the defendant.

■ On the basis of *Ross,* supra, the defendant here urged that the fact that approximately 8½ months had expired between the date of the alleged illegal drug transaction and the date of the arrest was enough for the Court to dismiss the indictment before trial. However, we did not think that the 8½ month delay, without more, provided us with an adequate basis to decide the *Ross* claims in the pre-trial stage. More specifically, we had no evidence as to the qualifying factors which were present in the *Ross* case, vis., whether there was any evidence to corroborate the undercover agent's testimony and whether the delay in arresting the defendant was reasonable. We expected that evidence bearing on these points might be developed during the ordinary course of trial. However, we advised counsel that if the defendant were found guilty, and if an adequate trial record had not been established on the *Ross* issue, we would entertain a separate post-trial factual hearing on this matter.[4] (N.T.T. pp. 4–6).

Defendant now claims that our failure to hold an evidentiary hearing and decide the *Ross* question in the pre-trial stage resulted in prejudicial error. Specifically, defendant avers that, as a result, he was "compelled" to question the undercover agent in order to protect the record in regard to his *Ross* claim, and that such questioning elicited from the witness the prejudicial fact that Morris had been declared a "fugitive" by the Federal Bureau of Narcotics.[5] (N.T.T. p. 106). It is argued that had an adequate pretrial hearing been held this allegedly prejudicial statement as to the flight of the defendant would not have been elicited.

■■ Initially we find that defendant's failure to timely object at trial to the testimony, pursuant to Rule 51 of the Federal Rules of Criminal Procedure, where an opportunity to so object existed, precludes the defendant from claiming prejudice now. United States v. Grosso, 358 F.2d 154 (3rd Cir. 1966), rev'd. on other grounds, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). Also, we do not find that the allegedly prejudicial testimony rises to the level of plain error affecting substantial rights of the defendant that would allow us to now note the objection, even though no timely objection had been made at trial. Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.; see Wright, Federal

4. In fact, a post-trial hearing on the *Ross* claim was held, at which testimony was had and legal argument entertained.

5. After inquiring *as to other arrests* the undercover agent had made on other members of the narcotics "ring" to which the defendant allegedly belonged, defendant's counsel asked:
"Why did you wait until January 17, 1968, some 8 and one-half months later, to make this defendant—."

To which the witness responded without objection:
"Because he was declared a 'fugitive' by the Bureau of Narcotics office. We went to his premises and looked in the premises where he hung around and could not get information where he was. Later he was declared a fugitive by the Bureau of Narcotics and memorandums and reports were sent to the New York City District in which we had information that he had gone to New York, fled." (N.T.T. p. 106).

Practice and Procedure, §§ 842, 856. Further, in light of our expressed willingness to entertain a post-trial factual hearing on the *Ross* claim, we do not think it an accurate characterization that the defendant was "compelled" to protect the trial record in this regard.

Thus, in light of the above, we conclude that the procedures we adopted were fair and reasonable and do not merit the granting of a new trial.

## MOTION TO QUASH THE INDICTMENT

We turn finally to the defendant's contention that, on the basis of the evidence and testimony adduced at trial and the special post-trial hearing,[6] we should quash the indictment on the basis of *Ross v. United States, supra.*

Essentially, the defendant's claim is that the delay of approximately 8½ months between the date of the alleged illegal transaction and the date of arrest was unjustified and resulted in denying the defendant due process of law, in that the 8½ month hiatus had so dulled the defendant's memory as to render him unable to defend himself.

On May 2, 1967, Norton J. Wilder, a Philadelphia police officer assigned to the Federal Bureau of Narcotics and Dangerous Drugs, had George Payne, an informant whom had been utilized about twenty times (N.T.T. 139), contact the defendant by phone to arrange for a sale of heroin for later that day. Wilder, who was working in an undercover capacity, and Payne met the defendant at the designated time and location. The sale was concluded, and a later government analysis showed that the substance which the defendant had sold to Payne was heroin. The transaction was witnessed by two Federal agents who substantially corroborated Wilder's account at the trial.

Since the government planned to make further purchases from the defendant as well as from other members of the narcotics "ring" of which the defendant was the reputed head, (N.P.T.H. p. 21) the defendant was not taken into custody on May 2 as an arrest at that time would have jeopardized the contemplated concurrent investigations. After obtaining enough evidence for multiple arrests, the government decided to terminate their investigation and, on November 14, 1967, obtained warrants for the arrest of the defendant and four others. (N.P.T.H. p. 21).[7] Except for the defendant, all the members of the "ring" against whom warrants were issued were apprehended within the next week. (N. P.T.H. p. 22). The defendant was not arrested until January 17, 1968, allegedly because he had absented himself from Philadelphia prior to that time.

At the trial, however, the defendant testified that except for short periods of time, he was working[8] and residing in Philadelphia between September, 1967 and January, 1968. At the post-trial hearing, the defendant produced three witnesses[9] who supported his claim.

---

6. Hereinafter, notes of the post-trial hearing will be cited as "N.P.T.H."

7. It appears inconsistent that Wilder could testify that the defendant could have been arrested in late September, 1967 without jeopardizing concurrent investigations into other suspected "ring" members (N.P.T.H. p. 20), and yet, later state that between September and November attempts to purchase drugs from other suspected "ring" members were being made (N.P.T.H. pp. 21–23). We think this apparent conflict can be resolved by concluding that Wilder, in his initial statement, was applying hindsight. In other words, since the attempts to purchase drugs after September, 1967 proved

fruitless, the defendant could actually have been arrested as early as September, 1967 without jeopardizing the concurrent investigation.

8. The defendant, who claimed to be a self-employed window-washer, kept no daily records or diary of activities.

9. The defendant's mother, who resides in Philadelphia, stated that her son visited her weekly. His girl friend testified that the defendant had been living with her in her Philadelphia home since September, 1967. A neighbor of the defendant recalled seeing him frequently during the time of his alleged absence.

However, having had an opportunity to assess the demeanor of these "alibi" witnesses, we did not find their testimony credible. Rather, we were convinced by Agent Wilder's testimony as to the government's frequent, and unsuccessful, attempts to locate the defendant in Philadelphia since September 12,[10] as well as being influenced by the fact that of the 5 "ring" members for whom warrants were issued on November 14, 1967, all but the defendant were arrested within a week's time.[11]

■ In the *Ross* case, supra, the defendant was allowed to claim as the period of alleged prejudicial delay the total time between the date of the transaction and the date of arrest because the defendant was found to have been available for arrest throughout this period. However, in light of our findings and on the record in the case presently before us, we do not think it proper that the defendant here should be allowed to claim the total period of pre-arrest delay as prejudicial. Rather, we find that the defendant can only claim the time between the date of the offense, May 2, 1967, and the date at which he was available for, and capable of, arrest. Since the government was looking to arrest the defendant on November 14, 1967 (the date at which a warrant was issued for the defendant's arrest), and since the defendant would most probably have been apprehended within one week after the issuance of the warrant had he not absented himself, the defendant will only be allowed to assert approximately 6½ months of post-offense delay in his claim of prejudice.[12] With this limitation in mind we now turn to the merits of his claim.

Since *Ross* is the leading case favoring dismissal of an indictment for denial of due process because of prejudicial pre-arrest delay, a careful examination of that authority is instructive. The court there held:

"Speaking only to what this record discloses, we think there was an undue subordination of appellant's interests which should not, at least in a record as barren of reassuring corroboration as this one, result in a sustainable conviction." 349 F.2d at 212.

What does the record in *Ross* disclose?

What we have, thus, is a case where, although it is concluded that appellant was continuously available for arrest, seven months elapsed between the time of the alleged sale of narcotics and the swearing out of the complaint; and where, apart from the narcotics, the Government's case consisted solely of a policeman's testimony that he had purchased narcotics from appellant. The issue involved is given concreteness by the fact that this witness had no personal recollection of the incident, but testified largely from a recollection refreshed just before trial by reference to his contemporaneous entries in a notebook. 349 F.2d at 212.

The record before us is, thus, one which shows (1) a purposeful delay of seven months between offense and arrest, (2) a plausible claim of inability to recall or reconstruct the events of the day of the offense, and (3) a trial in which the case against appellant consists of the recollection of one witness refreshed by a notebook. 349 F.2d at 215.

10. See, N.P.T.H. pp. 17, 18, 24, 26, 27, 52, 67, 69, 74–76.

11. As a result of the defendant's unavailability, he was declared a "fugitive" by the Federal Narcotics Bureau on January 11, 1968. (N.P.T.H. p. 17).

12. Since we have determined that the delay between the filing of the warrant and the date of arrest was not attributable to the government's lack of diligence, the defendant cannot be heard to rely on Godfrey v. United States, 123 U.S.App. D.C. 219, 358 F.2d 850 (1966), aff'g, United States v. Godfrey, 243 F.Supp. 830 (D.D.C.1965). In *Godfrey*, the court held that, where the defendant was found to be continuously available for arrest, it was unreasonable for the police to wait two months to execute on the warrant.

Thus, under these restricted conditions, influenced by "[T]he recurring spectacle of convictions based solely upon the testimony of a police witness" (349 F.2d at 215), and at least suspicious that practices which in the court's view amount to denial of due process arise from budgetary limitations (349 F.2d at 212–213), the court reversed the conviction. We do not think that similar action is warranted by the record in the case presently before us.

 Under the *Ross* rule, the reasonableness of the police conduct in the particular case is to be weighed against the possible prejudice to the defendant. 349 F.2d 212–213. Here, defendant's arrest was postponed because, at the time of the sale, Wilder, the undercover agent, was working on related narcotics cases. In fact, other objects of Wilder's efforts were those suspected of being in league with the defendant. Under these circumstances, an earlier arrest of the defendant would have revealed Wilder's identity and rendered him useless in the other cases. It thus appears that the delay of defendant's arrest was for a valid, reasonable police purpose.[13]

On the other hand, the defendant attempted to show that his defense was prejudiced by the delay. That defense consisted of a general denial of ever having sold the narcotics and testimony that he could not remember where he was on May 2, 1967. While there may even be a question of whether the defendant had adequately made out a claim of prejudice, see Dancy v. United States, 129 U.S.App.D.C. 413, 395 F.2d 636, 638 (1968), we nevertheless find that on the record in this case the danger of misidentification is extremely remote.

Initially, we find that one element in *Ross,* vis., that the government's case consisted solely of the uncorroborated testimony of a single witness whose recollection was wholly refreshed by reference to notes, is missing from our case. Here, Agent Wilder testified that although he had reviewed his file on the case before trial, his testimony and recollection of events were independent of any notes or records he had made. (N.T.T. pp. 65, 68, 71–74).[14] Also, the danger of misidentification was reduced by Wilder's ability to recognize the defendant on the date of the purchase. (N.T.T. pp. 53–54, 64, 102). Although Wilder testified that he did not personally know the defendant before the transaction, he had seen him before; defendant had been identified to Wilder, and Wilder knew who the defendant was. (N.T.T. pp. 54, 100–101). Finally, unlike *Ross,* two other government witnesses, Federal Narcotics Agents Davis and Young, identified the defendant[15] as the man in the company of Wilder and the informant at the time of the alleged transaction, and substantially corroborated other portions of Wilder's account of the sale.[16]

---

13. The defendant argues that Agent Wilder had come out into the open during the summer of 1967 by making numerous narcotics arrests (N.T.T. p. 105). It is contended that there was no valid police purpose in delaying defendant's arrest after the summer for "it is elemental that the effectiveness of such an agent does not survive the time when it becomes known that he is a policeman." Ross v. United States, 349 F.2d at 212. We find that although Wilder had made other arrests during the summer of 1967, as to this investigation (i. e. the narcotics "ring" of which the defendant was the reputed head) he preserved his "cover" until the five warrants were issued on November 14, 1967.

14. At the time of the transaction in question, Agent Wilder had had approximately 3 years of experience in the field of narcotics investigations. (N.P.T.H. pp. 28–29).

15. It should be noted that Agents Young and Davis, who were in a car across the street observing the transaction, followed the defendant when he drove off and later observed him talking to a group of men for between 5 and fifteen minutes. (N.T.T. pp. 130–131, 155).

16. Wilder testified essentially as follows: that he and Payne, the informer, arranged over the telephone to meet the defendant at a specified time and location. The defendant drove up to the des-

Admittedly, the testimony of the informer, Payne, who was called as a witness by the defense, portrayed a somewhat bizarre and factually inconsistent account of the alleged transaction.[17] However, the fact remains that Agent Wilder's testimony was, in material part, corroborated by other government witnesses. The existence of this element then serves to distinguish our case from *Ross*.

As stated above, the court in *Ross* was concerned with a defendant's right to be convicted only upon reasonably reliable identification. Under the circumstances in our case where (1) the undercover agent had an independent recollection of the transaction which was substantially corroborated by two other government witnesses, and where (2) the police conduct in postponing the arrest was reasonable, we do not find that the resulting prejudice to the defendant, if any, resulted in a denial of due process. Whitted v. United States, 411 F.2d 107 (9th Cir. 1969); Wilson v. United States, 409 F.2d 184 (9th Cir. 1969). Accord-

---

ignated street corner, Wilder gave Payne the money and Payne got into the car, Wilder remaining outside on the sidewalk. Payne gave the money to the defendant, who then handed over a package. Payne got out of the car, handed the package to Wilder, and the defendant drove off. Agents Young and Davis, who were in a car across the street observing, then followed the defendant. A short while thereafter, all the agents and Payne met at a specified location and a field test was run on the contents of the package and a positive opia reaction was noticed.

We note the following discrepancies in the testimony of Agent Wilder, the undercover agent, and Agents Young and Davis: (1) the location of the street corner at which the defendant's car stopped (Wilder testified it was the southwest corner of 18th and Reed Streets (N.T.T. p. 52); Young and Davis said the northeast corner (N.T.T. pp. 130, 151)); (2) the color of the shirt defendant was wearing (Wilder—green (N.T.T. p. 64); Young—blue (N.T.T. p. 158)); (3) whether Agent Wilder reached into the car (Wilder—no (N.T.T. pp. 51–53, 77); Young and Davis—yes (N.T.T. pp. 131, 152–153)). However, we do not think that these discrepancies impugn the general corroborative effect of Young's and Davis' testimony.

17. Payne testified that he alone was standing on the sidewalk when the defendant pulled up to the curb in a car. After speaking to the defendant, Payne went into a restaurant to get the money from Wilder. Payne then got into the car with the defendant and drove off. During the trip, Payne gave the money to the defendant, who stopped the car 6 or 7 blocks from where Wilder was, and let Payne off. Payne testified that the defendant pointed to a place on the sidewalk where there obstensibly lay a cigarette package containing the drugs. The defendant then drove off. Without touching the package, Payne sent a young boy as a messenger to get Wilder, who, a short time later, arrived at the scene and retrieved the package from the sidewalk.

The following trial testimony may shed some light on why Payne, who is no stranger to the courts, may not have corroborated Wilder's testimony as to the facts of the transaction:

"By Mr. Leidner: You know from your own experience and your background to have it in your hand is to possess it, don't you?

Payne: Yes.

Leidner: And that is a crime?

Payne: Yes.

Leidner: So that according to your sworn testimony you never touched the bundle in this case, did you?

Payne: No." (N.T.T. p. 272).

We note the above to point out that Payne may have had an interest in not corroborating Wilder's story in its factual aspects. Nevertheless, it should be remembered that although Payne's testimony as to the factual occurrence did not comport with Wilder's, it did make out a substantive offense against the defendant. Therefore, it would have been permissible for a jury to disregard as not credible Payne's testimony as to the facts of the transaction because of his professed interest in not fully corroborating Wilder's story, and yet, find Payne's testimony credible, and thus corroborative of Wilder's, as to making out the elements of the crime against the defendant. In any event, we find that the account of Wilder, which was substantially corroborated by both Agents Young and Davis, was more credible than Payne's.

ingly, defendant's Motion to Quash the Indictment is denied.

## SPEEDY TRIAL

■ Defendant also claims that the charges against him should be dismissed because the delay between the end of the government's need for secrecy and the defendant's arrest denied the defendant's right to a speedy trial guaranteed by the Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure.[18] For the reasons stated below, we find that this claim is without merit.

Initially, we find that this argument was not seasonably made since it was first raised with particularity in defendant's Memorandum in Support of Post-Trial Motions. Even if we were to generously interpret defense counsel's statements on the day of trial (N.T.T. pp. 2-4) to incorporate this argument, the motion to dismiss still could not be considered timely. Fleming v. United States, 378 F.2d 502 (1st Cir. 1967); Wright, Federal Practice and Procedure, § 814. Further, since we have determined that part of the pre-arrest delay was for a legitimate police purpose, and the other part was chargeable to the defendant, the delay cannot be characterized as "unnecessary." Rule 48(b), Federal Rules of Criminal Procedure; Fleming v. United States, supra; Wright, supra, § 814.

All other points raised by defendant have been considered and found to be lacking in merit.

## ORDER

And now, this 15th day of January, 1970, it is hereby ordered that the defendant's Motions for a New Trial, to Quash the Indictment and to Dismiss the Charges are hereby denied.

---

18. The defendant makes no complaint as to any post-arrest or post-indictment delay.