UNITED STATES of America
v.
Robert FELDMAN, Appellant.
No. 17943.

United States Court of Appeals,
Third Circuit.

Argued Feb. 17, 1970.

Decided May 1, 1970.

689

Thomas C. Carroll, Philadelphia, Pa., for appellant.

Charles B. Burr, II, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before KALODNER and VAN DUSEN, Circuit Judges, and FULLAM, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The defendant, Robert Feldman, was found guilty on October 24, 1968, after trial to a jury, of concealing assets of a bankrupt from a receiver, in violation of 18 U.S.C. § 152. His sentence, imposed on February 13, 1969, required a period of confinement. In his appeal from that sentence, the defendant contends: first, that the indictment should have been dismissed because of prejudicial delay between the alleged commission of the crime and the return of his indictment; and, second, that judgment of acquittal should have been entered at the close of the Government's case.

The defendant purchased Store Merchandisers, Inc., a wholesale distributor of drug supplies and beauty care items, on December 22, 1964, when the company was in serious financial difficulty.

The indictment alleges that on January 15, 1965, the defendant (Treasurer of Store Merchandisers) concealed three truckloads of Store Merchandisers' property. An involuntary petition of bankruptcy, alleging that Store Merchandisers was bankrupt, was filed on February 4, 1965, and on March 24, 1965, after the defendant had filed the required forms on which he failed to list himself or his separately owned retail drug outlet as a debtor of Store Merchandisers, the corporation was adjudicated a bankrupt. Following his examination of certain of the bankrupt's records and of former employees at hearings held in April and May 1965, the Trustee in Bankruptcy recommended to the United States Attorney that an investigation be initiated, with a view toward prosecution of the defendant for concealing assets of the bankrupt. The federal agent assigned to the investigation interviewed the defendant in August 1965; although it is possible that he may have interviewed other witnesses in the summer of 1965, it does not appear that there were any further interviews after August 1965. On approximately December 13, 1965, the Trustee notified the agent that he intended to destroy all the records of the bankrupt,[1] as is customary in the usual bankruptcy case. The Trustee offered the records to the agent, who, after consultation with the United States Attorney, informed the Trustee that the Government had no objection to their destruction. The records were then destroyed, without notice to the defendant.[2] The defendant was first indicted on January 4, 1967, for making a false oath to a referee in bankruptcy; this charge has not been prosecuted. On December 15, 1967, a second indictment was returned, under which the defendant was subsequently convicted, as recited above. The Voluntary Defender was appointed to represent the defendant on March 19, 1968.[3]

### Alleged Prejudicial Delay in the Return of the Indictment

When the defendant was arraigned,[4] his counsel orally moved to dismiss (p. 54 of Document 22) the indictment on the basis of an oral statement of the alleged prejudice resulting from the delay in the indictment, namely, that defendant had been deprived of the ability to prove by written evidence from the records destroyed in December 1965 the truth of the oral statements that he proposed to make on the stand in his own defense.[5] Oral argument was heard by

1. After the filing of the involuntary petition in bankruptcy, all the records of Store Merchandisers, including cancelled checks, invoices, and billings, were surrendered to the receiver, who became the trustee. The defendant's lawyer testified that the information for the schedules required to be filed by the defendant in the bankruptcy proceeding was taken from the records in the possession of the attorney for the trustee, from the defendant, and possibly from other sources (N.T. 206 & 213).

2. It is suggested that the Government should see that such records are preserved until it has finally been determined that no prosecution will result from an investigation that it has undertaken. At the least, it should see that such records are offered to any potential defendant, with the clear admonition that prosecution is being considered, before they are destroyed.

3. Although the lawyer who represented the defendant in the bankruptcy proceeding entered an appearance in his defense, he took no steps to prepare the defense and was allowed to withdraw in March 1968 when he discovered that the defendant could not pay for his services.

4. The first trial started on October 9, 1968, and resulted in the withdrawal of a juror on October 10 when it was discovered that the defendant had not been arraigned. At the subsequent arraignment on that day, a timely motion to dismiss the indictment was made and argued to the court by counsel, but no evidence was offered by counsel for defendant, who was permitted to file a supporting memorandum (Document 25). The second trial was then scheduled for October 15 and started October 17.

5. Counsel for defendant contended (pp. 57–58 of Document 22):
"It is true that in this case my client can take the stand and testify in his

the District Court at that time. However, the defendant did not offer to call the receiver-trustee, the counsel for such fiduciary, the bankrupt's accountant, or anyone else[6] to testify that invoices or other records covering the goods in the allegedly concealed truckloads of merchandise were among the destroyed records.[7]

In opposing the Motion, the Government stated that the defendant had been alerted to the importance of preparing a defense through an investigation of him by an F.B.I. agent in the presence of his counsel in August 1965, at which time he had been warned of his rights. The Government explained that the delay in indictment had been caused by the absence of helpful records,[8] necessitating a continuing of the investigation in order to establish the alleged offense by witnesses rather than documents. Rebutting the defendant's claim that the records "may" have been helpful to him, the Government explained that not only were the records useless, but also that its witnesses would testify that the defendant told the bankrupt's employees not to prepare any invoices covering the concealed goods. The Motion to Dismiss was denied on October 15, 1968.

We agree with the recognition in Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), relied on by the defendant, that, in treating a defendant's claim of prejudicial delay, his rights under the due process clause must be determined by a balance between the need of law enforcement officials to delay prosecution and the prejudice to the defendant caused by this delay:

"[Although the delay in charging the defendant was a conscious choice, that] alone does not condemn it, because the Department is motivated solely by a purpose to enhance its effectiveness in the public interest. But the Constitution contemplates a separate interest in fair procedures for the citizen faced with the loss of his liberty by reason of criminal charges. When interests of this nature impinge upon each other, as they have a way of doing, they must be accommodated. A balance must be struck, if one or the other is not to be sacrificed completely."

349 F.2d at 213. The court in Ross concluded that there was "no inevitable necessity" for the sacrifice of either of these interests since revision of police

own behalf as to what happened but as Your Honor is well aware it is always good to have written evidence to corroborate testimony from the stand.

\* \* \* \* \*

"I believe that written corroboration of many of the statements that my client will want to make in his own defense should we have to proceed in this case could have been furnished from the records of the bankrupt corporation of which he was the owner at the time of the bankruptcy \* \*."

6. At trial, the defendant testified that a Store Merchandisers employee named "Arlene" could have corroborated his story that exonerating documents were among the bankrupt's records. She was not called, and no explanation was offered for her absence.

7. Four days after the argument on the motion to dismiss, at which time the District Court had taken the matter under advisement, the defendant submitted to the court a motion for a hearing to pre-

sent additional facts. There was no indication in this motion that the facts to be offered would have added to those already suggested at argument. Further, since the motion was submitted only one day before the second trial was scheduled to begin (p. 53 of Document 22) (and three days before it actually started), it was untimely. We cannot say that the District Court's refusal to grant this motion was reversible error.

8. The agent testified at the trial that he could not find among the records any invoices covering the concealed goods or any checks payable to Store Merchandisers from defendant's retail store (N.T. 182–183), and commented as follows:

"I would have to say that the records were in a state of disarray. It was extremely difficult to get any intelligence out of the records anyway because of their condition. They were stored in old cardboard cartons and were in a complete state of disarray, the records themselves as well as any cancelled checks I may have seen."

practices could prevent prejudice to the defendant. Compare Jones v. United States, 402 F.2d 639, 641 (D.C.Cir. 1968).

■ We do not believe, however, that the defendant has presented sufficient evidence of prejudice in this case to justify a reversal of the District Court's determination not to dismiss. See United States v. Childs, 415 F.2d 535 (3rd Cir. 1969). At the pre-trial hearing, the court was presented with a Government assertion that no helpful documents were contained in the records and a defense assertion only that there "may" have been some helpful evidence. The defendant presented no testimony whatsoever to fortify this claim, nor was there any testimonial denial that the defendant had not been given notice sufficient to alert him to the importance of preparing a defense at the August 1965 interview.[9] Under these circumstances, the District Court was entirely justified in denying the motion.[10]

### Alleged Error in Denying Motion for Judgment of Acquittal

■■ On a motion for judgment of acquittal at the close of the Government's case, the evidence and the inferences to be drawn from it must be taken in the light most favorable to the Government. E.g., Hale v. United States, 410 F.2d 147 (5th Cir. 1969); see Crawford v. United States, 126 U.S.App.D.C. 156, 375 F.2d 332, 334 (1967). Where the motion is waived by the presentation of evidence by the defendant in his own behalf and then renewed at the close of all the evidence, as in this case, the sufficiency of the evidence must be judged upon the record as a whole. E.g., Cline v. United States, 395 F.2d 138 (8th Cir. 1968).

■ A careful examination of the record as a whole, taken with appropriate inferences in the light most favorable to the Government, discloses the following facts. The defendant ordered three truckloads of Store Merchandisers' merchandise to be removed from its warehouse on or about January 15, 1965. Two of these truckloads were eventually unloaded at the defendant's separately owned retail store; one truckload was sent to another wholesaler. None of the merchandise in any of the trucks was invoiced, contrary to the usual procedure, and no bills were made out by Store Merchandisers to the recipients of the merchandise. The bookkeeper of Store Merchandisers was told by defendant not to worry about invoices for these truckloads. No payment was made for two truckloads that went to the retail store, and the merchandise unloaded there was relabeled with the retail store's own label. Payment for the truckload that went to the wholesaler was made to the defendant personally; he did not pay to Store Merchandisers any of this amount. On the schedule

9. Because the argument occurred immediately after the declaration of a mistrial and arraignment of the defendant, any witnesses the defendant could have called, including himself, should have been readily available to testify in support of the Motion to Dismiss. The Government's witnesses would have similarly been available.

10. We approve the practice of the District Court in United States v. Childs, Criminal No. 23170, E.D.Pa., aff'd. 415 F.2d 535, 536–537 (3rd Cir. 1969), of holding a factual hearing on appropriate motion prior to the start of the trial and of leaving open the possibility of revising the ruling if prejudice becomes apparent during the trial. It is not clear that such a procedure was followed here, since defendant's counsel did not raise the issue of prejudice at any time during the trial. In any case, the only testimony during trial that would support a finding of prejudice was that given by the defendant that exonerating invoices were in the records. This testimony was contradicted by the testimony of five Government witnesses, who stated that the truckloads involved had not been invoiced, and of the investigating agent, who stated that he found no such invoices in his search of the records. As both the jury's verdict and the comment of the trial judge that he, sitting as the fact finder, would also have found the defendant guilty indicate, the defendant's testimony concerning the invoices was not believed.

filed by the defendant with the Referee in Bankruptcy, neither the defendant nor his retail store was listed as a debtor of Store Merchandisers.

In view of these facts, the District Court's denial of the defendant's renewed motion for judgment of acquittal was proper.

Since the Government concedes, most commendably, that the judgment and commitment of February 13, 1969, does not comply with 18 U.S.C. § 3651,[11] that judgment and commitment will be vacated and set aside and the case will be remanded for resentencing of the defendant. Upon such resentencing consistent with Title 18, United States Code, the judgment of conviction will be affirmed.

---

11. 18 U.S.C. § 3651 provides that the "court * * * may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period and upon such terms and conditions as the court deems best." The judgment and commitment of February 13, 1969, provides for confinement in a jail-type institution for a period exceeding six months and for suspension of execution, with probation, of the balance of the sentence.