**UNITED STATES of America**

**v.**

**Robert JONES.**

**Crim. No. 23554.**

United States District Court, E. D. Pennsylvania.

March 2, 1971.

Louis C. Bechtle, U. S. Atty., Victor Wright, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Defender Ass'n of Philadelphia, David Rudovsky, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

Defendant Robert Jones was found guilty April 7, 1970, by jury verdict on all counts of a four-count indictment charging illegal sales of narcotic drugs. He seeks a judgment of acquittal as to the two counts relating to an alleged sale of heroin July 11, 1968, and a new trial on the two counts relating to an alleged July 2, 1968, sale.

The defendant was indicted on these four counts December 17, 1968, more than five months after the alleged sales. The alleged sales had been made to an undercover police agent, Paul F. Ricks, who broke cover at the end of August or beginning of September, 1968. Jones was arrested September 27, pursuant to a warrant charging him only with an unlawful sale on July 2. It was not until he received a copy of the indictment by mail sometime after December 17 that Jones knew he was being charged with a sale on July 11 as well.

This case came before us following Jones' first trial before the Honorable Charles R. Weiner. At the close of testimony in that trial, the defendant had changed his plea to guilty. At the time of sentencing, however, he was allowed to withdraw that plea and a new trial was ordered. When defendant first appeared before us, his previous counsel was permitted to withdraw and the Defender Association was appointed February 9, 1970, to represent him at trial. The case was continued to allow counsel time to prepare adequately.

The Defender Association assigned this case to defendant's present attorney, an Assistant Defender in that office, approximately ten days before Jones' April 6 trial. Less than a week before trial, counsel moved for dismissal of counts III and IV of the indictment relating to the July 11, 1968, sale. We denied this motion pursuant to Rule 12(b) (3) of the Federal Rules of Criminal Procedure on the grounds that it was not filed within a "reasonable time" after the defendant's plea. At the subsequent trial, the defendant was convicted on all four counts.

Decision in this case depends on the resolution of three separate issues: (1) Is the defendant entitled to a reconsideration now of his allegation that he was denied due process? (2) Was the defendant denied due process of law by the government's delay in informing him of the charges against him? (3) Did this court's failure to dismiss counts III and IV prior to trial so prejudice the defendant as to counts I and II that a new trial should be ordered as to these counts?

## I. IS THE DEFENDANT PRESENTLY BARRED FROM RAISING HIS CONSTITUTIONAL OBJECTIONS?

■ Defendant's pretrial motion to dismiss counts III and IV of the indictment was treated by us, without challenge, as a motion under Rule 12(b), Fed. R. Crim. P. When defendant's motion was filed more than 50 days after his plea and appointment of new counsel, we felt this was another in a series of dilatory tactics with which defendant had burdened the federal courts and thus we denied the motion under Rule 12(b) (3), which states: "The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter." The defendant charges that this ruling was an abuse of discretion and that we must meet his motion on its merits. We disagree.

■■ However, reexamination of the record has persuaded us that the defendant had not been attempting to delay the proceedings against him and that the late presentation of his constitutional claim was due not to intentional irresponsibility but to bureaucratic bungling on the part of the Defender Association. Defendant's motion was made nearly a week before trial, early enough for the prosecution to have an answer prepared by trial.[1] If we do not hear the motion now, the defendant will have what we believe is a valid constitutional defense on the merits to counts III and IV; yet he will be left without a remedy for the government's violation of his constitutional rights.

Nonetheless, we do not believe a motion for a judgment of acquittal is the proper way to raise the delay issue again. The defendant is not challenging the sufficiency of the evidence, which is the sole ground set out in Fed. R. Crim. P. 29 for a judgment of acquittal.

However, we do believe reconsideration of defendant's motion is proper, pursuant to the inherent power of this court "to do justice." *See* United States v. Dooling, 406 F.2d 192 (C.A. 2, 1969); United States v. Apex Distributing Co., 270 F.2d 747, 756 (C.A. 9, 1959); *cf.* Burns v. Massachusetts Institute of Technology, 394 F.2d 416, 418 (C.A. 1, 1968). Rule 2, Fed. R. Crim. P., emphasizes this notion:

> "These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

In the interest of justice, therefore, we will consider defendant's motion to dismiss as though it had been timely raised.

## II. SHOULD THE MOTION TO DISMISS COUNTS III and IV BECAUSE OF PROSECUTORIAL DELAY BE GRANTED?

■■ Jones complains here that the delay between the alleged sale of July 11 and the notice in late December or early January that he was being charged with such a sale was prejudicial in that it hampered presentation of his defense. The resolution of the present motion rests on a determination of whether Jones was denied due process by the delay.

In Ross v. United States, 121 U.S. App.D.C. 233, 349 F.2d 210 (1965), the court reversed a conviction where seven months had elapsed between an alleged narcotics sale and the swearing out of a complaint, where the defendant made a plausible claim of inability to recall or reconstruct the events of the day of the

---

1. In argument before us on this motion, defendant's counsel stated the prosecution had an answer prepared at the time of trial. The United States Attorney did not challenge this statement. It does not appear on the record whether or not this was so, since we refused to consider the defendant's motion at the time it was raised.

offense, and where the case against the defendant at trial consisted of the recollection of one witness refreshed by a notebook. Although the court recognized the due process implications of the case, the decision was based on the supervisory responsibility for criminal proceedings. 349 F.2d at 216. However, that same court was more explicit in its reliance on due process grounds for reversal in a later case, in which Judge McGowan, the author of *Ross,* stressed the due process basis of that former decision. Woody v. United States, 125 U.S. App.D.C. 192, 370 F.2d 214, 218 (1966).

In United States v. Feldman, 425 F.2d 688 (C.A. 3, 1970), the court said, at page 691:

> "We agree with the recognition in Ross v. United States, * * * that, in treating a defendant's claim of prejudicial delay, his rights under the due process clause must be determined by a balance between the need of law enforcement officials to delay prosecution and the prejudice to the defendant caused by this delay. * * *"

See also United States v. Morris, 308 F. Supp. 1348, 1355 (E.D.Pa. 1970).

The determination of whether there has been a violation of due process depends on "accommodating the public interest in effective law enforcement with the accused's interest in the fairness of the criminal procedures by which the charge against him is determined." 370 F.2d at 218.

Thus, the standard which we must apply in determining whether due process has been denied defendant Jones here is whether the benefit accruing to legitimate governmental interests by the delay outweighs the harm done to the defendant's interest in a reliable process of guilt determination.

There is no dispute that the time between the alleged July 11 sale and the date in late August or early September when Agent Ricks broke cover served a valid governmental interest, i. e., in the effective enforcement of narcotics laws. On the other hand, not even the prosecution here argues that any valid interest was served by the approximately four-month delay between the time Ricks broke cover and the time the defendant was notified of the charges relating to the July 11 sale.[2] Therefore, no weight should be given to the government's side of the balance.[3]

The mere fact that we find no legitimate governmental interest served by the four-month delay between the time Ricks broke cover and the time Jones was notified of the charges arising out of the alleged July 11 sale does not end the case. The heart of a defendant's due process claim must be that somehow the delay increased the risk that he would be erroneously convicted. *Cf., e. g.,* Woody, *supra,* 370 F.2d at 217n.7 (Bazelon, J.). Absent a showing of such harm, defendant's due process claim must fail.

In *Ross,* the court found sufficient prejudice in the defendant's plausible claim of inability to recall or reconstruct the events of the day of the offense. The court there said: "In a very real sense, the extent to which he was prejudiced by the Government's delay is evidenced by the difficulty he encountered in establishing with particularity the elements of that prejudice." 349 F.2d at 215. Justice Brennan, in his probing analysis of the problems of governmental delay in his concurrence in Dickey v.

---

2. Agent Ricks testified that when he obtained the arrest warrant for Jones on September 24, 1968, he was no longer protecting himself from revealing undercover status. The reason he gave for not mentioning the July 11 sale in the warrant, which omission resulted in the delay Jones complains of here, was that the United States Commissioner instructed him that he didn't have to put all facts pertaining to the case in the warrant.

3. It should be noted that this absence of weight on the government's side of the balance in delay cases will occur only when the delay has no purpose to advance the public interest in effective law enforcement.

Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), agreed with *Ross* that concrete evidence of prejudice often is not at hand, and argued, "[I]t seems that inherent in prosecutorial delay is 'potential substantial prejudice' * * *."

In the instant case, the defendant made out a plausible claim of inability to recall or recollect the events of the day of the offense. He testified at trial that when he was informed by mail that he was being charged with a sale on July 11, he tried to find out where he had been on July 11, but was unable to recollect where he had been or what he had been doing. At that time, nearly six months had passed since July 11. Judge Wright of the District of Columbia Circuit Court pointed out the significance of such delay in narcotics cases:

> "The people in this subculture simply do not have desk pads and social calendars to assist them in determining where they were at a particular time many months before. They live from day to day and one day is very much like another." Powell v. United States, 122 U.S.App.D.C. 229, 352 F. 2d 705, 711 (1965) (dissent).

That description certainly applies to this defendant, who, at the time of the alleged sale, was working an erratic schedule as a part-time bartender.

The government argues that Jones did have recollection of the events surrounding the July 11 sale, even if he did not remember the date. The government points to the testimony of Agents Ricks, Davis and Young as establishing that the meeting with Ricks, which Jones remembered, took place on July 11.

This argument ties in with the government's contention that *Ross* does not cover this case because the evidence against the defendant here consists of more than the recollection of one witness refreshed by a notebook. *Cf. Ross, supra*, 349 F.2d at 215. Both the fact that three witnesses identified Jones and the fact that Jones' recollection of his meeting with Ricks conforms to the description by the police of what they say was

the July 11 sale make it less likely that the delay increased the chance that Jones would be convicted though innocent. We are not deciding whether we can rely solely on prosecution witnesses to establish the key fact that this was the July 11 rather than the July 2 meeting, particularly when the core of the defense is that the agents are lying. Even if we can take as established that Jones did remember a meeting which took place on July 11, his ability to prepare a defense is still substantially hampered by the delay. Jones' defense to the July 11 charge is that he didn't sell any heroin. The agents accompanying Ricks were not close enough to observe any more than that Jones went to the car, an account thoroughly consistent with Jones' defense. In the end, therefore, the case comes down to a matter of credibility: Jones against Ricks. It is in just such a situation that a defendant is desperate for any kind of supporting testimony which indicates that his conduct on the day in question was consistent with his innocence. Because of the delay, Jones has been deprived of the opportunity to find such testimony. Even assuming the July 11 meeting was the one he described, Jones knows only that he was around the bar where he worked on that day. He has no recollection of whether he was working or just visiting. So, he has no recollection of where else he might have been or whom else he might have seen. In short, he has no way to discover evidence that might help him in his defense and no way to know exactly how he is being prejudiced.

Measuring this substantial potential prejudice against the reliability of the prosecution evidence, we feel the delay has increased the likelihood that Jones might be convicted even though innocent. When this harm to the defendant's interest in a reliable guilt-determination process is balanced against what we have already determined to be a non-existent governmental interest in the delay, the balance clearly comes out in favor of the defendant. We therefore

feel counts III and IV of the indictment must be dismissed.

### III. DID THIS COURT'S FAILURE TO DISMISS COUNTS III AND IV PRIOR TO TRIAL SO PREJUDICE THE DEFENDANT AS TO COUNTS I AND II THAT A NEW TRIAL SHOULD BE HELD ON THOSE COUNTS?

Rule 33 of the Federal Rules of Criminal Procedure provides: "The court on motion of a defendant may grant a new trial to him if required in the interest of justice." In the instant case, because of our failure to dismiss counts III and IV of the indictment prior to trial, as we should have done, the jury heard evidence about the alleged July 11 sale as well as about the July 2 sale which had inspired counts I and II.

Had Jones been charged only with the July 2 sale, it is unlikely that evidence of the July 11 sale could have been introduced at trial. Evidence of other offenses is generally inadmissible in a criminal prosecution for a particular crime.[4] United States v. Carter, 401 F. 2d 748 (C.A.3, 1968); United States v. Stirone, 262 F.2d 571, 576 (C.A.3, 1958). The rationale for this general rule is that such evidence would unduly prejudice the defendant and would tend to confuse the issues in the case. See, e.g. Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

Such legal recognition of the prejudicial effect of evidence of other criminal conduct by a defendant on trial for a particular crime reinforces our belief that evidence pertaining to the alleged sale of July 11 could not have been introduced at Jones' trial without prejudicing his chances of acquittal on counts I and II. We therefore believe it is in the interest of justice to grant him a new trial on counts I and II.

---

4. There are several exceptions to this general rule, which are usually stated in terms of the capacity of the evidence to prove some specific fact or issue such as intent, knowledge, plan or scheme. What they boil down to is a general exception for evidence of other offenses which is relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime. United States v. Carter, 401 F.2d 748, 749 n. 1 (C.A. 3, 1968). The evidence of the July 11 sale does not seem to fit within the exceptions.