UNITED STATES of America

v.

Anthony Lewis JASPER.

Crim. No. 71-132.

United States District Court,
E. D. Pennsylvania.

Sept. 2, 1971.

Louis C. Bechtle, U. S. Atty., Victor L. Schwartz, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Sanford Kahn, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

FULLAM, District Judge.

On April 21, 1971, an indictment was returned against the defendant charging him with failing to submit to induction into the Armed Forces, a duty required of him by the Military Selective Service Act of 1967. 50 App.U.S.C. § 462(a) (1967). The violation is alleged to have occurred on June 12, *1967*. Defendant has moved to dismiss the indictment on the ground that the government's delay in bringing him to trial has resulted in deprivation of his statutory and constitutional rights.

Defendant registered with the Selective Service System on July 30, 1962. On November 18, 1964, after he had completed and returned a classification questionnaire he was classified II–S on the basis of his attendance at Duquesne University. On December 8, 1965, he was reclassified I–A. On January 14, 1966, defendant's local board received notification that defendant had been admitted to the freshman class at Cheyney State College and that defendant would begin a full-time course of instruction on January 27, 1966. Also, on January 14, the local board was notified that defendant had been found medically acceptable for induction and on February 17, defendant was ordered to report for induction on March 2, 1966.

In a letter dated February 23, 1966, defendant's local board informed him that he would not be required to report for induction and that his "case [would] be considered for reclassification" at the local board's March meeting. On March 10, 1966, defendant was classified I–S(C) until May 27, 1966. On June 16, 1966, defendant informed the local board he was an advanced sophomore at Cheyney, and requested a personal appearance. On June 30, 1966, the local board received a letter from Cheyney which stated that defendant was a sophomore whose graduation could not be expected prior to January 1970.

Defendant appeared before the local board on July 15, 1966. The minutes of the meeting reflect that defendant had withdrawn from Duquesne University in order to help support his mother who was ill at the time, and that he then enrolled at Cheyney. The Clerk was instructed to write to Cheyney to ascertain the reason defendant would not graduate until 1970.

On August 3, 1966, the local board received SSS Form 109–A (Student Certificate) from Cheyney which indicated that Cheyney could not accept all the credits defendant had earned at Duquesne, that defendant was a student in good standing, and that he was scheduled to be graduated in May 1970. On September 15, defendant was again classified I–A.

On October 3, 1966, the local board received another SSS Form 109–A from Cheyney. The numbers on this form are almost illegible; however, it appears to indicate a date of expected graduation in 1968 or 1969.

On December 22, 1966, defendant was ordered to report for induction on January 3, 1967. However, on December 30, after defendant requested a postponement of his induction until the end of the school year, this request was granted and his induction was postponed until May 28, 1967. On March 1, the local

board received another Form 109–A. This one indicated defendant would be graduated in May 1968.

On May 31, 1967, defendant's local board sent him notice that he was to report for induction on June 12, 1967. On June 7, 1967, after receiving a letter asking him to telephone the local board, defendant was told that there was a possibility that headquarters might postpone his induction. Later that day he was informed he would have to report as originally scheduled. On June 12, defendant did report to the induction station but declined to be inducted.

On June 14, 1967, the adjutant officer of the induction center, in a letter to the United States Attorney, reported defendant's refusal to submit to induction. The letter set forth that at the induction center defendant stated in writing that he was refusing induction because submitting to induction would violate his religious and moral standards. He also requested an appearance before his local board to explain his position. A note in defendant's file signed by the Clerk of the local board indicated that defendant appeared at the local board on June 14, 1967, asked to see his file and stated, *inter alia*, that he was a conscientious objector.

On July 6, 1967, defendant's file was sent to state headquarters and on July 12, state headquarters returned the file to the local board with a letter stating that the defendant should be reported to the United States Attorney and directing the local board to prepare Form 301 ("Delinquent Registrant Report") and to return it and the file to state headquarters. Apparently this was done, and on August 21, 1967, state headquarters returned the file to the local board with the advice that defendant had been reported to the United States Attorney.

A memorandum dated November 20, 1967, prepared by the clerk of the local board, stated that an Assistant United States Attorney telephoned the local board and informed the clerk that defendant appeared to be a "hard-working student" and requested the clerk to inquire of Cheyney College concerning his academic status. The local board received a Form 109–A from Cheyney on November 22, 1967, which indicated that defendant was enrolled as a full-time student, was a junior, and would receive his degree in May 1969. This information was then given to the United States Attorney.

On August 13, 1968, the United States Attorney suggested to state headquarters that in view of United States v. Stafford, 389 F.2d 215 (2nd Cir. 1968), it would be necessary to have the local board consider defendant's claim for I–O classification.

On August 21, state headquarters returned defendant's file to the local board along with a letter which incorporated the suggestion of the United States Attorney.

On June 24, 1968, the local board received another Form 109 from Cheyney which indicated that defendant continued to be enrolled as a full-time student, was attending summer school and was expected to be graduated in May 1969.

On October 9, 1968, a memorandum in defendant's file indicates defendant telephoned the local board and stated that he had had difficulty in receiving his mail and had only the day before received SSS Form 150 (Special Form for Conscientious Objectors). He was told he should submit it immediately.

On October 11, 1968, the local board requested defendant to appear before it on October 18 to discuss his classification. On December 11, the local board forwarded defendant's file to state headquarters along with a letter stating that defendant had failed to return the Form 150 and had failed to appear before the board.

On December 16, 1968, state headquarters informed the United States Attorney of these facts and stated that it appeared that the defendant had been afforded all applicable procedural rights.

A year later, on December 23, 1969, the United States Attorney requested

state headquarters to send an up-to-date Selective Service file in order that the file could be given "a proper review." Nothing had been added to the file since December 11, 1968.

Fourteen months after that the United States Attorney again requested state headquarters to furnish copies of any documents added to defendant's file since December 11, 1968. No new documents had been added.

Defendant contends that dismissal of the indictment is required under Federal Rule of Criminal Procedure 48(b) because there has been unnecessary delay in bringing the defendant to trial, and under the Sixth Amendment because the defendant has been denied his right to a speedy trial.

The government responds, citing Kroll v. United States, 433 F.2d 1282 (5th Cir. 1971), that the rights conferred by Rule 48(b) and the Sixth Amendment do not accrue to a defendant until he is indicted and, therefore, that an indictment returned within the period provided by the applicable statute of limitations may not be challenged on Sixth Amendment or Rule 48(b) grounds. The government also argues that, in any event, the defendant, to justify dismissal, must demonstrate that he was prejudiced by the delay and that the defendant has not done so here.

■ The government's first argument must be rejected in the face of the language of Rule 48(b):

"If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer in the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

The construction the government suggests does violence to the clear language of the Rule, which obviously contemplates the dismissal, in certain situations, of indictments valid under the statute of limitations. *See* 3 C. Wright, Federal Practice and Procedure, § 815 at 321–22 (1969).

■■ There appear to be three related theories upon which dismissal for pre-indictment delay can be based. The first two, the right to a speedy trial and the inherent power of the court to dismiss a case for lack of prosecution, are implemented by Rule 48(b). Pollard v. United States, 352 U.S. 354, 361, n. 7, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394, 398, cert. denied 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962); C. Wright, supra, § 814; 8A J. Moore, Federal Practice ¶ 48.03[1]. The third is the Fifth Amendment due process right of a defendant not to be deprived of the ability to defend himself by unnecessary delays caused by the government. Ross v. United States, 121 U.S. App.D.C. 233, 349 F.2d 210, 216 (1969).

This latter theory has been utilized in the Third Circuit in two recent cases dealing with pre-prosecution delay. United States v. Childs, 415 F.2d 535 (3rd Cir. 1969); United States v. Feldman, 425 F.2d 688 (3rd Cir. 1970). Under this analysis a defendant's

"rights under the due process clause must be determined by a balance between the need of law enforcement officials to delay prosecution and the prejudice to the defendant caused by the delay." United States v. Feldman, *supra*, at 691.

■ Applying this analysis to the present case, it is necessary to determine the weight which should be accorded to the government's side of the balance. Certainly the government reasonably required some time to investigate the circumstances surrounding the defendant's alleged refusal to submit to induction. And it was reasonable for the government to attempt to afford defendant such procedural rights as appeared to be required. However, on December 17, 1968, a year and a half after the al-

leged illegal act, after state headquarters had informed the United States Attorney that defendant had been afforded all applicable procedural rights, it appears there was no further reason to delay the prosecution. The government asserts that the additional delay was necessary to determine whether "new developments" would obviate the need for an indictment, and that prosecution was delayed for the defendant's benefit. However, the government fails to suggest what new developments it was awaiting and, in fact, none occurred. Therefore, it must be concluded that there was no valid reason to delay seeking an indictment for two and one-third additional years. In evaluating this delay, no weight may be given to the government's side of the balance. United States v. Jones, 322 F.Supp. 1110, 1113 (E.D.Pa. 1971).

In determining the weight to be given to defendant's side of the balance, it would be reasonable to presume prejudice, United States v. Mitchell Roy Berger et al., 71–152 (E.D. Pa., July 28, 1971); but, in any event, defendant has demonstrated prejudice on the merits. Defendant contends that if he had been indicted and brought to trial promptly, before the decision in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L. Ed.2d 625 (1971), he would have been able to assert a defense to the validity of the induction order. It appears that prior to *Ehlert* the local board had a mandatory duty to supply defendant with SSS Form 150 and to consider his claim for I–O classification. United States v. Bowen, 414 F.2d 1268 (3rd Cir. 1968); Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970). If the local board failed to furnish Form 150 it would have rendered the induction order invalid. United States v. Bowen, *supra*.

Defendant contends that he could show that, contrary to the memorandum in his file dated October 9, 1968, he informed the local board that he had never received SSS Form 150 but only an empty envelope and that he never received a notification of the personal appearance scheduled for him on October 18, 1968. Defendant testified at the hearing that witnesses who could corroborate the difficulty he had in receiving mail at his address had become unavailable. It appears that defendant's ability to defend himself has been impaired and it therefore must be concluded that through the government's lengthy and unnecessary delay defendant has been deprived of due process.

■■ Defendant's claim that the indictment should be dismissed is even stronger when analyzed in terms of the Sixth Amendment right to a speedy trial. Not only does the Sixth Amendment comprehend the due process rights discussed previously, *see C. Wright, supra*, § 815 at 823; United States v. Rubin, 439 F.2d 942 (3rd Cir., 1971), but also the right to be free of the needless hardship and anxiety that attend a lengthy and unnecessary delay in prosecution. Klopfer v. North Carolina, 386 U.S. 213, 222, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *J. Moore, supra*, ¶ 48.04 [3] at n. 47. In the present case the delay of two and one-third years before the prosecution was even begun was both unnecessary and of substantial length, and it therefore follows that defendant's Sixth Amendment right to be free of the needless personal hardship attendant to an unnecessary delay in prosecution has been significantly invaded. United States v. Colitto, 319 F.Supp. 1077, 1081 (E.D.N.Y. 1970).

■ Defendant also asserts that the indictment should be dismissed on non-constitutional grounds pursuant to Rule 48(b). This rule, while it implements the Sixth Amendment speedy trial guarantee, provides a more stringent standard for evaluating prosecutorial delays. It "is a restatement of the inherent power of the court to dismiss a case for want of prosecution." 18 U.S.C.A. Fed.Rule Criminal Procedure 48(b), Notes of the Advisory Committee on Rules (1961), and among its purposes is

the vindication of the public interest in the prompt prosecution of those believed to be guilty of criminal conduct. United States v. Mark II Electronics of Louisiana, Inc., 283 F.Supp. 280, 283 (E.D. La.1968) ; *see* United States v. Mitchell Roy Berger, *supra*, at 4. While that part of the rule dealing specifically with delay in presenting charges to the grand jury is inapplicable to this case because defendant was never held to answer in the district court, *see* United States v. Navarre, 310 F.Supp. 521 (E.D.La. 1969), the broader provision of the rule allowing dismissal where there has been unnecessary delay in bringing the defendant to trial is fully applicable. Considerations of the public interest, such as those mentioned above, require that this indictment be dismissed. *See* United States v. Navarre, 310 F.Supp. 521 (E.D.La.1969).