**UNITED STATES of America,**
**Appellee,**

v.

**Arman KILIYAN, Jr., Appellant.**
**No. 71–1355.**

United States Court of Appeals,
Eighth Circuit.

March 10, 1972.

11. *Id.*

**556**

Donald L. Schlapprizzi, St. Louis, Mo., for appellant.

Robert B. Schneider, Asst. U. S. Atty., St. Louis, Mo., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, STEPHENSON, Circuit Judge, and REGISTER, Senior District Judge.

REGISTER, Senior District Judge.

Defendant was charged by a two-count indictment filed in the United States District Court for the Eastern District of Missouri with violations of the Federal Firearms Act. Count I of the indictment charged that the defendant made firearms (two thereinafter described hand-grenades) without having paid the required making tax, and without having filed the required application form, in violation of Sections 5861(f) and 5871, Title 26, U.S.C.; Count II charged the defendant with transferring said grenades without paying the required transfer tax, in violation of Sections 5861(c) and 5871, of Title 26. Following trial by jury, defendant was found guilty on both Counts, and was sentenced to eight years imprisonment on each Count, the terms to run consecutively. Ten alleged errors are raised and presented on this appeal. All have received the careful consideration of this Court, and several merit discussion in detail.

1. Defendant contends that the trial court committed reversible error by failing to sustain his motions for judgment

of acquittal, because of failure of the Government to prove two essential elements of the offenses charged: (a) that the grenades were "destructive devices" within the purview of the statute, and (b) that the *defendant* did not register the two grenades with the National Firearms Center in Washington.

The first witness for the Government, at the trial, was Donald M. Plante, special investigator with the Alcohol, Tobacco and Firearms Division of the United States Treasury Department. He testified that he purchased the grenades here involved from the defendant at the latter's home in St. Louis, Missouri, on June 29, 1970; that the following morning he took the grenades to the 50th Army Ordnance Detail in Granite City, Illinois and delivered them, for storage, to Agent Mike Kuhns; that several days later he returned and witnessed Kuhns tape each grenade to a pipe standing in the ground, attach a long rope to the pin, pull the pin, but the grenade did not explode. Defendant's contention that the Government failed to prove that the grenades were "destructive devices" is based primarily upon the testimony that they failed to explode when they were thus test fired by Agent Kuhns.

Subsequent testimony in the Government's case in chief discloses that after the tests, Kuhns dismantled the grenades, removed blackish powder from each and sent it to Washington for analysis, and that this powder was black gunpowder capable of causing an explosion. Agent Kuhns, prior to his employment by the Treasury Department, was a Captain in the United States Army, Commanding Officer of the 50th Ordnance Detachment, Explosive Ordnance Disposal Unit at the Army Depot in Granite City, Illinois. The record establishes his qualifications as an expert on various types of explosives, including grenades. He testified that an "explosive grenade" consists of a body or a container, an explosive filler, and a fuse or initiating device of some means; that each of these grenades consisted of an M-21 training grenade body, with a plug in the bottom, a fuse and an explosive filler containing approximately twenty-one grains of black powder—that the amount of such powder in each grenade was about the same as that used in combat grenades; that in his opinion the only reason why each of the grenades did not explode when first tested was that a "band-aid" had been placed over the primer; that if the tape had been removed when it was first tested it would have exploded; that, even with the "band-aid" in place, it might have exploded if it had been thrown rather than taped to a post and the pin pulled; and that if the grenade had functioned, it would have exploded and fragmented.

Title 26, Section 5845(a) (8), U.S.C., defines "Firearm" as including a "destructive device." "Destructive device" is defined in Title 26, Section 5845(f), in pertinent part, as follows:

> "(f) Destructive device.—The term 'destructive device' means (1) any explosive . . . (B) grenade . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraph (1) . . . and from which a destructive device may be readily assembled."

The Government's proof clearly established beyond a reasonable doubt that the grenades were "destructive devices" (and "firearms") within the statutory definitions.

It was essential that the Government prove beyond a reasonable doubt that the defendant failed to make an application for making and transferring the firearms, and to pay the required making and transfer taxes. Agent Plante testified that he sent to the National Firearms Registration Records Center a description of the two grenades and the name of the defendant, in order to determine whether the defendant had ever had these grenades registered to him. The proof concerning the evidence or lack of evidence, in the records, to show

compliance with the law, was in the form of certificates by J. Edward Burns, Coordinator, Firearms and Explosives Branch, Alcohol, Tobacco and Firearms Division of the Internal Revenue Service, which disclosed that the search was made with reference to Arman *Kalyan*, Jr. Mr. Burns testified in person, stated that he was one of the official custodians of the records kept at the Center, and described the method or procedure used in the Center with reference to the making tax and application to make firearms, and the transfer tax and application to transfer, under the Gun Control Act. He testified that, upon final approval of the application form, the original is returned to the applicant and that the duplicate is retained and filed alphabetically (by name) among the Center's registration records. He also testified that he helped make the Certification and "I searched the records and made a determination regarding the lack of any registration of the weapons described." The weapons described in the Certificates were the two grenades. The Certificate which was offered in evidence as Gov't's. Ex. 16, was objected to by counsel for defendant, who stated, "My objection is that the Certification is hearsay * * *." It was thereupon received and, with the permission of the Court, Government counsel began to read it to the jury. During the reading, certain further objections were made—these included "no proper foundation for any certification," "that all this is a matter of the law and invades the province of the jury," and "no proper foundation laid for his reading the description of these two purported weapons. There has been no foundation laid as to those numbers or any other type of identification." This last objection clearly referred to the identification of the grenades. To the Certificate offered as Gov't's. Ex. 11, defendant's counsel objected as being hearsay and not the best evidence. All objections were overruled. There was no objection at any time to either exhibit for the reason that the

name appearing therein was spelled differently than the name appearing on the indictment, or for the alleged reason that the person whose name appeared in the Certificate was not the defendant.

■ After the Court overruled defendant's motion for judgment of acquittal at the close of the Government's case, the defendant testified in his own behalf. On direct examination he testified that he had never made or transferred any grenades, and on cross-examination specifically denied having made or transferred the grenades involved in this case. The necessary and only reasonable inference that could be drawn by a jury from such testimony would be that the defendant had not made an application for the making and transferring of the grenades. The jury must be permitted to draw fair and reasonable inferences from the evidence, and we are satisfied that this evidence sufficiently established a basis for the inference, and was sufficient to justify the conclusion arrived at by the jury in this case. Niederluecke v. United States, 47 F.2d 888 (8 Cir. 1931); Hale v. United States, 410 F.2d 147 (5 Cir. 1969), cert. den. 396 U.S. 902, 90 S.Ct. 216, 24 L. Ed.2d 179.

It is, of course, established law that on a motion for a judgment of acquittal at the close of the Government's case, and at the close of all of the evidence, the evidence and inferences to be drawn from it must be taken in the light most favorable to the Government. *Hale*, supra; Crawford v. United States, 126 U.S.App.D.C. 156, 375 F.2d 332 (1967); United States v. Feldman, 425 F.2d 688 (3 Cir. 1970). In Cline v. United States, 395 F.2d 138 (8 Cir. 1968), this Court held that a defendant, whose motion for acquittal made at the close of the Government's case was overruled, waived such motion by offering evidence in his own behalf after the motion was overruled, and that such motion which is renewed at the close of all of the evidence is entitled to consideration but "The sufficiency of the evidence challenge, however, must be based upon the

entire record including the evidence of the defendant." (p. 144.) See, also: *Feldman*, supra, 425 F.2d p. 692.

Viewing the evidence in the light most favorable to the Government, we must conclude that this essential element of the offenses charged was established beyond a reasonable doubt.

2. Appellant strenuously urges that the trial court committed prejudicial error and was guilty of an abuse of discretion, in failing to discharge juror Mrs. Jean F. Evans, and substitute the alternate juror for her. After the jury had been impaneled, and the regular jurors and the one alternate juror had been sworn, defense counsel (at the Bench, and out of the hearing of the jurors) requested the trial court to excuse regular juror Evans and substitute the alternate. Counsel informed the Court that it was his understanding that she had been stricken peremptorily by Government counsel, that he had been mistaken because of a certain confusion in the numbering on the jury list, and that he thought "that her being a member of the Jury could be prejudicial to the Defendant inasmuch as there may be some testimony touching the fact that some black people may be involved in an alleged offense taken by this Defendant * * *." Juror Evans was the only negro on the jury. Government counsel objected to the granting of this request, and suggested that the requested action might be prejudicial to the Government. The Court's reasoning appears in the record—that juror Evans had been accepted by counsel; that both counsel had exercised all of their peremptory challenges; that the panel had been exhausted; that there was only one alternate; and he did not deem it advisable to proceed with the trial without an alternate being available; that the mistake was that of counsel for the defendant, and that favorable action might result in prejudice to the Government. The request was denied.

Rule 24(c) of the Federal Rules of Criminal Procedure provides, in pertinent part:

"Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be *unable* or *disqualified* to perform their duties." (Emphasis added.)

The "mistake" upon which the request was based was indisputably that of counsel for the appellant. Juror Evans was properly qualified to serve as a juror, had been subject to voir dire examination, and found acceptable. The granting of the request would, in effect, have given to the defendant one peremptory challenge in addition to those to which he was entitled, and would have removed the only alternate from possible necessary future service. Appellant has failed to demonstrate any abuse of discretion in the Court's refusal to grant the request. Furthermore, the record discloses no testimony during the trial involving "black people" as mentioned by counsel during the conference at the Bench, no factual basis for a claim of actual prejudice, and no showing that the Court's action did in fact prejudice appellant's rights in any degree. There is no showing that Juror Evans was either unable or disqualified to perform her duties as contemplated by the rule. We find no merit in this contention of appellant.

3. Appellant next contends that the trial court committed prejudicial error by refusing to permit defendant's wife to testify in his behalf. After the jury was sworn and prior to the opening statement of counsel for the Government, he made a motion for exclusion of all witnesses from the Courtroom, which motion was granted by the Court without objection. Thereupon the Court announced:

"Ladies and Gentlemen in the Courtroom, other than those of the Jury and Counsel here at the bar, Counsel in this case has asked for the Rule on the witnesses, which means merely this: that no one who will testify can be in the Courtroom from this point forward and will stay in the

Witness Room. If there are any persons here who will be witnesses or who think they may be called as a witness, will they please leave the Courtroom at this time?"

The record discloses that the defendant's wife occupied a seat in the Courtroom throughout the trial. During the testimony of Plante (first Government witness), he referred to a brief statement allegedly made to him by defendant's wife during the time he was attempting to acquire the grenades from the defendant at the latter's residence, and during the testimony of Mr. Watkins (second Government witness at the trial), he also testified to a short statement allegedly made by defendant's wife, in his presence, relative to the grenades, at defendant's residence.

After the defendant had testified in his own behalf, his counsel informed the Court that he desired to call defendant's wife as a witness. In support of this request, counsel for appellant argued that, at the time the Court granted the motion and ordered all witnesses to leave the courtroom, he had no reason to anticipate the necessity of calling defendant's wife to testify, and that the necessity arose only by reason of the allegedly unexpected testimony of Plante and Watkins. The Government's counsel objected, and the request was denied. At the suggestion of the trial Judge, and with the approval and upon request of counsel, the Court thereupon informed or advised the jury as follows:

"THE COURT: Ladies and Gentlemen of the Jury, the Counsel for the Defendant has requested that he call the wife of the Defendant, Mrs. Kiliyan, to the witness stand.

The Court announced before the evidence was taken that the rule on the witnesses had been invoked. That means that no one can sit in the Courtroom and subsequently testify except the Defendant himself, who has the right to confront all witnesses.

For that reason, of the Court's own motion, I am refusing to allow her to testify, since she has been in the Courtroom and has heard the other testimony, and the Court publicly announced the rule on the witnesses."

The controlling general rule, as stated by the Supreme Court in Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010, is:

"If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court."

This Court held, in Slocum v. United States, 325 F.2d 465, 467 (8 Cir. 1963), that:

"Whether a witness who does not comply with such an order shall or shall not be allowed to testify is undoubtedly a question for the trial court."

That this is a correct statement of law is now well established. Spindler v. United States, 336 F.2d 678 (9 Cir. 1964), cert. den. 380 U.S. 909, 85 S.Ct. 894, 13 L.Ed.2d 797; United States v. Johnson, 345 F.2d 457 (6 Cir. 1965), cert. den. 382 U.S. 836, 86 S.Ct. 83, 15 L.Ed.2d 79; United States v. Marson, 408 F.2d 644 (4 Cir. 1968), cert. den. 393 U.S. 1056, 89 S.Ct. 695, 21 L.Ed.2d 698. The exercise of that discretion will not be disturbed except in case of clear abuse thereof. *Johnson*, supra.

It is clear from *Holder*, supra, that "the right to exclude *under particular circumstances* may be supported as within the sound discretion of the trial court." (Emphasis added.)

In United States v. Schaefer, 299 F.2d 625, 631 (7 Cir. 1962), cert. den. 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497, the Court interpreted "these particular circumstances to mean some indication the witness was in court with 'the consent, connivance, procurement or

knowledge of the appellant or his counsel.'" This interpretation was in effect approved by the Court in Taylor v. United States, 388 F.2d 786 p. 788 (9 Cir. 1967), which said:

"* * * it would seem that the 'special circumstances' justifying such refusal should be such as tend to make the litigant a party to and justly subject to sanction for the witness's disobedience."

The order for exclusion of witnesses was made without objection, was made in open Court, and its meaning and effect specifically expressed by the Court. If, arguendo, defendant and his counsel did not anticipate the necessity of calling defendant's wife as a witness at the time of the Order, she was permitted to remain in the Courtroom thereafter through the trial, with their knowledge and consent. After the testimony of Plante and Watkins, she was permitted to remain in the Courtroom during the testimony of three additional Government witnesses, and during the testimony of the defendant. This can be interpreted only as an intentional violation, not only on the part of Mrs. Kiliyan, but also on the part of the defendant and his counsel. We also note that the trial court was not apprised, by an offer of proof or in any other manner (except inferentially by argument), specifically as to the relevancy and materiality of the testimony sought to be produced through the excluded witness. We are satisfied that there then existed such "particular circumstances" as supported the challenged exercise of the discretion of the trial court, and that the rejection of the proffered testimony did not amount to an abuse of that discretion.

4. Appellant asserts that the trial court committed prejudicial error in refusing to allow his counsel to ask a certain hypothetical question on cross-examination of a Government witness.

 In general, the form of a hypothetical question must be left largely to the discretion of the trial court. New York Life Insurance Co. v. Doerksen, 75

F.2d 96, 102 (10 Cir. 1935); Metropolitan Life Insurance Co. v. Armstrong, 85 F.2d 187 (8 Cir. 1936). While it is unnecessary for the proponent of the evidence to include all facts shown by the evidence in the hypothetical question (Simpson v. Skelly Oil Company, 371 F. 2d 563 (8 Cir. 1967) ), it should be in such form as not to mislead or confuse the jury. In Harris v. Smith, 372 F.2d 806 at page 812 (8 Cir. 1967), this Court stated:

"As was stated in Dickerson v. Shepard Warner Elevator Co., 6 Cir., 1961, 287 F.2d 255, at 260:

'* * * Where a hypothetical question leaves out facts in evidence which so qualify the facts included that an answer to the question would be misleading and based upon inadequate premises, objection to the question should be sustained.'"

The record discloses that the trial court expressed its opinion to counsel at the Bench that the hypothetical question, in the form asked, was defective and misleading in that it omitted an essential fact then in evidence, and informed counsel that if he would rephrase the question so as to include the fact omitted, the Court would permit him to reinquire. Counsel refused so to do. The record further reveals that the trial court had permitted liberal cross-examination of this witness, which cross-examination had included the subject-matter of the hypothetical question. In the light of the record, we are convinced that no prejudice resulted to the appellant from this action of the trial court, and that if the court was in error by such action, the error would be classified as harmless error under Rule 52(a) Federal Rules of Criminal Procedure, 18 U. S.C.A.

 5. Appellant's next claim of error arises from the trial court's admission into evidence of Government Exhibits 11 and 16, and 9 and 15. The basis of the alleged error as to Exhibits 11 and 16 is that the name appearing on each of these exhibits did not sufficiently identify the defendant as being the

person referred to therein. The circumstances under which these exhibits were received, and the fact that no such specific objection was made at trial and that all objections made were specific, have been discussed hereinbefore under appellant's first claim of error. This error cannot be for the first time raised and considered on appeal. Duke v. United States, 255 F.2d 721 (9 Cir. 1958), cert. den. 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365.

"* * * It is therefore the general rule that points not raised and preserved below will not be considered on appeal." (Numerous citations.) Colonial Refrigerated Transportation, Inc., v. Mitchell, 403 F.2d 541, 552 (5 Cir. 1968).

"* * * since the ground on which appellant attacks such evidence on appeal was not specifically stated in its objection, the error, if any, committed by the trial court in overruling such objection was waived by appellant.", (Citation of authority.) Complete Auto Transit, Inc., v. Wayne Broyles Engineering Corporation, 351 F.2d 478, 483 (5 Cir. 1965).

"It is fundamental that where an objection is specific it is deemed to be limited to the ground or grounds specified and it does not cover others not specified." Knight v. Loveman, Joseph & Loeb, Inc., 217 F.2d 717, 719 (5 Cir. 1954).

Contrary to appellant's contention, adequate foundation for reception of Government Exhibits 9 and 15 appears of record.

■■■ 6. Appellant's sixth claim of error is that the trial court abused its discretion in permitting Government witness Agent Kuhns to express an opinion in response to a hypothetical question asked on direct examination, which opinion appellant claims was "based on sheer guesswork, speculation and conjecture invading the province of the jury." Kuhns' qualifications as an expert on explosives (including hand grenades) had been established and were impressive. He testified that he had personally inspected the grenades, had test-fired them, had dismantled them, and was familiar with their components. His opinion was based upon his undisputed expertise as an expert and his personal observations of the grenades. Opinion testimony of a qualified expert, based on personal observation and investigation, on matters involving technical skill, is clearly admissible. Securities and Exchange Commission v. Thomasson Panhandle Co., 145 F.2d 408 (10 Cir. 1944); Rhynard v. Filori, 315 F.2d 176 (8 Cir. 1963); Barnes v. Omark Industries, Inc., 369 F.2d 4 (8 Cir. 1966).

■■■ The other matters raised by appellant are also considered to be of no merit and will be referred to but briefly. Appellant's challenge to the constitutionality of the statute here involved has been decided adversely to his contentions by the Supreme Court in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). While counsel for the Government did not consume all of his allotted time for closing argument, and did not divide the time equally between the initial part and rebuttal, we can conceive of nothing prejudicial to the appellant as a result thereof, nor do we find any prejudicial comments in his rebuttal argument. That portion of the Court's charge to the jury which is challenged by appellant consists of the statutory definition of "firearm" contained in the statute under which appellant was indicted. The instruction was proper. Finally it is contended that the District Court abused its discretion in sentencing appellant to eight years on each count. The sentence was less than the maximum that could have been imposed. The applicable rule that has been accepted and consistently applied by this Court, was expressed by Judge Gardner in Lipscomb v. United States, 273 F.2d 860 pp. 864–865 (8 Cir. 1960), cert. den. 364 U.S. 836, 81 S.Ct. 72, 5 L.Ed.2d 61 rehearing den. 364 U.S. 888, 81 S.Ct. 173, 5 L.Ed.2d 108, as follows:

"* * * As the court imposed sentences authorized by statute, the rea-

sonableness of the sentences is not a matter which we may review. Affronti v. United States, 8 Cir., 145 F. 2d 3; Egan v. United States, 8 Cir., 268 F.2d 820; Jacobsen v. United States, 8 Cir., 260 F.2d 122; Holmes v. United States, 8 Cir., 115 F.2d 528; Johnson v. United States, 8 Cir., 126 F.2d 242; Holmes v. United States, 8 Cir., 134 F.2d 125. As said by us in Affronti v. United States, supra:

'The court imposed a sentence authorized by statute. This Court cannot concern itself with the question of the reasonableness of the sentence. "Where a District Court imposes a sentence authorized by a statute of the United States, it commits no error of law." Holmes v. United States, 8 Cir., 115 F.2d 528, 529; Johnson v. United States, 8 Cir., 126 F.2d 242, 251; Holmes v. United States, 8 Cir., 134 F.2d 125, 135.' (145 F.2d 10.)."

There being no reversible error, the judgment of the District Court is affirmed.