**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Thomas DALPIAZ,
Defendant-Appellant.**

**No. 75–1619.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1975.

Decided Dec. 15, 1975.

J. Gregory Wehrman, Wehrman & Wehrman, Covington, Ky. (Court-appointed CJA), for defendant-appellant.

Eugene E. Siler, Jr., U. S. Atty., Richard E. Duerr, Jr., William D. Kirkland, Asst. U. S. Attys., Lexington, Ky., for plaintiff-appellee.

Before WEICK, MILLER and ENGEL, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal from a jury conviction for knowing possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).[1] The alleged firearm is known as a ground burst projectile simulator, model number M115A2, and is used by the military in the training of infantry troops. It simulates incoming artillery fire and exposes the troops to the accompanying sound effects. This device was seized from defendant's person when he was about to board an airline flight from Cincinnati to Milwaukee and was detained at the security checkpoint by a guard. Defendant Dalpiaz was subsequently convicted of unlawfully attempting to board an aircraft while carrying a concealed and deadly weapon in violation of 49 U.S.C. § 1472(*l*). This Court affirmed the conviction challenged on Fourth Amendment grounds in *United States v. Dalpiaz*, 494 F.2d 374 (6th Cir. 1974). Shortly before the jury verdict had been returned in that case, Dalpiaz was indicted on the charge which is the subject of the present appeal.

The principal issue is whether the ground burst projectile simulator is a

---

1. 26 U.S.C. 5861(d) provides:

§ 5861. *Prohibited acts*

It shall be unlawful for any person—

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record;

firearm within the meaning of 26 U.S.C. § 5845.[2] Section 5845(a)[3] lists various items included within the statutory definition of firearm and among these is the term "destructive device." The government contends that the ground burst projectile simulator is a "destructive device," relying on the further definition of a "destructive device" in 26 U.S.C. § 5845(f)(1) as a "missile having an explosive or incendiary charge of more than one-quarter ounce," and the language in § 5845(f)(1)(F) "or similar device."[4] Defendant argues that the simulator is not embraced by the definition of "destructive device," and further, that the simulator falls within a specific exclusion of § 5845(f) which provides that "[t]he term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon . . . ."

Since defendant had no expert witness to testify about the nature of the simulator, both parties rely on testimony of the government's expert witness in support of their respective arguments. This expert testified that the simulator could be described as a hand-thrown missile and that it contains approximately two ounces of photo-flash material. This material does not function as a propellant charge but merely ignites a bright flash. The expert said that the device does not project any type of metal upon detonation but expels only the cardboard of which it is composed. However, he also stated that if the device detonates while lying on the ground, it makes a shallow depression in the ground and hurls out, at a rather high velocity, any gravel or sticks near it. He further stated that if the device should detonate while being held, the force would probably take off most of a person's hand. The expert estimated that there would be a six to ten second delay between the time of the lighting of the device and its explosion.

2. Section 5845 in general defines the term "firearm." Thus weapons falling within its scope are required to be registered under § 5861(d).

3. Section 5845(a) provides:

(a) *Firearm.*—The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) a muffler or a silencer for any firearm whether or not such firearm is included within this definition; and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary or his delegate finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

4. Section 5845(f) provides:

(f) *Destructive device.*—The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) gre-nade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary or his delegate finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device *as defined in subparagraphs* (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; or any other device which the Secretary of the Treasury or his delegate finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.

In addition, the expert repeatedly testified that the device is used primarily in the training of troops and would not be used by the military as a weapon. In describing the design and use of the device, he said:

> It is designed to be used in training. It was not intended or designed to be used against an individual or a particular structure or property as a specific weapon. It is not designed for that, no, sir.

The only evidence about the nature of the device other than the expert's testimony was a written warning on the side of the simulator[5] that the device should be "thrown on ground" free of flammable objects.

■ After consideration of the evidence and the terms of the statute, we conclude that the ground burst projectile simulator is not a "destructive device" within the meaning of 26 U.S.C. § 5845(f). While the simulator may be a "missile having an explosive or incendiary charge of more than one-quarter ounce," or a "similar device," we are convinced it is specifically excluded by the statute from the term "destructive device" as it was "neither designed nor redesigned for use as a weapon."

■ Here the evidence was uncontroverted that the ground burst projectile simulator was designed for use in training troops, not for use as a weapon. Nor was there evidence that the device had been redesigned in any way. While the record does not reveal what Dalpiaz intended to do with the simulator, for purposes of determining whether the device comes within the statutory exclusion, his purpose is irrelevant. The court's comment in *United States v. Posnjak*, 457 F.2d 1110, 1116 (2d Cir. 1972), is equally applicable here: "The legislative history indicates that 'designed' in this context refers to objective, physical structure or method of operation and not to intent or schemes of the possessor." This comment was based on the fact that the House version of this legislation originally included language about both design and intent of the user, indicating that Congress drew a distinction between the two. The language concerning intent of the user was deleted from the final version of the bill. *See* H.R.Rep.No.1577, 90th Cong., 2d Sess. 10, 22 (1968); Conf.Rep.No.1956, 90th Cong., 2d Sess. 27–28 (1968); U.S. Code Cong. & Admin.News 1968, p. 4410.

Although most cases interpreting § 5845(f) have dealt with devices which were quite clearly "designed . . . for use as a weapon," two courts have considered whether devices used primarily for training purposes were "destructive devices" within the statute. In *United States v. Kiliyan*, 456 F.2d 555 (8th Cir. 1972), the Eighth Circuit held that a hand grenade which appears to have been used in training was a destructive device within § 5845(f). The court in *Kiliyan* did not explicitly consider the exclusion which we discuss here and may not have had before it evidence which distinguished the training hand grenade from a combat grenade in design. *See* 456 F.2d at 557. However, a federal district court considered much the same type of evidence before us in finding that hand-grenade fuse assemblies used for training were not destructive devices. *United States v. One 1972 Chevrolet El Camino Pickup Truck*, 369 F.Supp. 755 (D.Neb.1973). The court there specifically determined that the fuse assemblies were within the exclusion from the term "destructive device." While in that case the device may have had less destructive capability than the simulator in the present case, our conclusion that the simulator is excluded from § 5845(f) does not rest on its destructive

---

5. This warning read:

"HAZARD. Personnel closer than fifteen yards may be struck by burning paper fragments. The explosive violence is such that gravel, sticks, etc. may be projected at a dangerously high velocity, therefore care should be taken to see that this device is thrown on ground that is free of flammable objects. Dry leaves and grass may be ignited within an area of several feet."

capability nor did the district court's opinion in *One 1972 Chevrolet . . . Pickup* rest on the fuse assemblies' destructive capabilities.

We recognize that some courts with respect to devices having destructive capabilities have applied a "valid social use" test in determining whether the device comes within the statutory definition of a "destructive device." *See United States v. Tankersley*, 492 F.2d 962, 966 (7th Cir. 1974); *United States v. Posnjak, supra.* It appears to us, however, in the present case that the critical issue is whether the simulator is excluded by the language "any device which is neither designed nor redesigned for use as a weapon . . . " § 5845(f). As we find and hold that it is so excluded by the exception, it is unnecessary to inquire whether the device may or may not have some social value.

Our decision in this case should not be read to impose a burden on the government to prove that exceptions to § 5845(f) are inapplicable in a particular case. The legislative history of the section reveals that the exception is a matter of affirmative defense. S.Rep.No. 1501, 90th Cong., 2d Sess. 47 (1968). Despite the fact that defendant in this case presented no proof of his own, we believe that defendant sufficiently developed the basis for application of the statutory exception by cross-examination of the government witness. The exception was specifically relied upon by defendant in his motion for judgment of acquittal.

Since the statute is one imposing criminal sanctions, it should be strictly construed against criminal liability. *See United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

The judgment of conviction is reversed.