UNITED STATES of America, Plaintiff,

v.

Adam George HOMA, Jr., Defendant.

Crim. No. 76–CR–166.

United States District Court,
D. Colorado.

Dec. 7, 1977.

Joseph F. Dolan, U. S. Atty., and C. Scott Crabtree, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Marshall A. Fogel, Fogel, Keating & Wagner, Denver, Colo., for defendant.

### FINDINGS, CONCLUSIONS AND ORDER

MATSCH, District Judge.

This criminal case was tried to the Court pursuant to a knowing and voluntary waiver of jury trial. The indictment charged three counts of violations of 26 U.S.C. § 5861(d) by the knowing and unlawful possession of seven AN-M14 TH incendiary hand grenades (Count I); eighteen AN-M14 TH3 incendiary hand grenades (Count II); and twelve WP/M34 hand and rifle grenades (Count III). It was stipulated and agreed that the defendant did knowingly possess these items at the time and place alleged in the indictment, and that none of them was registered in the National Firearms Registration and Transfer Record in Washington, D. C. Accordingly, the only issue for trial was whether these grenades constituted firearms as defined in 26 U.S.C. § 5845. The relevant subsection is 5845(f), defining "destructive device." Deleting the language not here relevant, that subsection says that a "destructive device" means:

(1) Any explosive, incendiary, . . .
(B) grenade, . . . The term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon; . . .

The evidence at trial showed that the incendiary grenades which are the subject of Counts I and II of the indictment are canisters filled with thermite, a mixture of iron oxide, aluminum, barium nitrate and a binder. The grenade is operated by removing a safety pin pull ring and releasing a safety lever, activating an ignition fuse. After a two-second delay, the thermite burns at 4330° Fahrenheit, without any burst or explosion. The designed purpose of such incendiary grenades is the destruction of military equipment. They burn with sufficient intensity to go through steel plate, producing slag and continuing from twenty to forty-five seconds. These incendiary devices are used by military forces to destroy or incapacitate field equipment to prevent its use by an enemy.

Development of the WP/M34 grenade was begun at the Aberdeen Proving Ground, Maryland, in June, 1952, at the request of the Infantry Center at Fort Benning, Georgia, to improve upon the then existing M15 grenade. The military characteristics requested by the Army changed the design of the casing to make it possible to project it from a rifle with the same projecting device used for fragmentation grenades, and to increase the casualty-producing effects.

The filler in the WP/M34 and in the M15 is white phosphorus, a rock-like substance which burns spontaneously when exposed to oxygen. White phosphorus is so flammable that these grenades must be manufactured in an inert atmosphere. In addition to changing the over-all conformation of the grenade, the primary design differences between the M34 and the M15 are that the former was made much lighter, and the casing of the M34 was machined with weakened preferential lines in a checkerboard pattern to improve the burst and, thereby, the dispersal of the white phosphorus in a more uniform pattern.

The final engineering tests on the WP/M34 were completed in June, 1953. The conclusion from those tests was that the grenade did have an improved dispersal pattern with a radius of approximately twenty-three yards. The grenades are activated by the removal of a safety pin pull ring and the release of the safety handle, igniting a four to five second delay element which detonates a small amount of explosive material, causing a bursting of the casing and the dispersal of many small pieces of white phosphorus, which ignite upon contact with the air. Many of these chunks of burning white phosphorus fly through the air in an arcing trajectory and produce a thick, dense, white smoke. At a temperature of 5000° Fahrenheit white phosphorus particles will ignite almost any materials which they contact. They burn into human flesh, imbedding in a way in which physical removal is very difficult.

**332**

Such burns are extremely painful and result in scarring.

WP/M34 grenades do not produce injuries by fragmentation. The casualties result from the burning. The engineering tests included the placement of paper targets in a circle surrounding the grenade, and the burst produced burn holes in all of the targets. The dense smoke had a screening effect for a maximum period of ten seconds and served to screen an area of thirty yards in diameter.

The word "weapon" is not defined in the National Firearms Act. The simplest definition given in Webster's Third New International Dictionary is "something to fight with." (Page 2589)

The courts which have been called upon to apply the definition of "destructive device" in § 5845(f) have produced what has been described as a "confusing welter of cases." *United States v. Curtis,* 520 F.2d 1300, 1302 (1st Cir. 1975). The Fourth Circuit in *United States v. Morningstar,* 456 F.2d 278, 280–81 (4th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 135, 34 L.Ed.2d 153 (1972), and the Ninth Circuit in *United States v. Peterson,* 475 F.2d 806, 810–11 (9th Cir.), *cert. denied,* 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 93 (1973), believe that the possessor's intended use should be considered. The Second, Sixth and Fifth Circuits have excluded such purpose or intent as irrelevant. *United States v. Posnjak,* 457 F.2d 1110, 1116 (2d Cir. 1972); *United States v. Dalpiaz,* 527 F.2d 548, 551 (6th Cir. 1975); *United States v. Ross,* 458 F.2d 1144 (5th Cir.), *cert. denied,* 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972). The court in *Posnjak* noted that making the requirement of registration dependent upon the intent of the transferee would present the problems of self-incrimination discussed in *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). Moreover, if an evil purpose or intent would require registration of a device which would not otherwise be subject to the statute, would it not follow that an innocent or benign purpose would exempt "destructive devices"?

Here the defendant has testified to perfectly peaceful uses of the white phosphorus grenades and there has been testimony that military personnel use such grenades for signalling and smoke screening. The evidence includes training manuals which suggest that such uses are the primary military applications.

 The National Firearms Act is a regulatory statute, using the power of taxation to attempt to control the proliferation and distribution of firearms and destructive devices. It is the device which is subject to such control, not the user. Accordingly, it is the objective, physical structure of the device, or the method of its normal operation, which is significant to a classification of it as a "destructive device", and, therefore, a "firearm". *United States v. Dalpiaz,* 527 F.2d at 551; *United States v. Posnjak,* 457 F.2d at 1116. What must be registered are those devices which are of such a nature that they are inherently inimical to the public safety if they are freely possessed by private persons in an open society.

 At the trial of this case I granted the defendant's motion for judgment of acquittal on Counts I and II of the indictment because the government's evidence showed that the thermite grenades were nothing more than instruments for the controlled burning of material. They are in the configuration of nonbursting grenades only for convenience in their use by the military in field operations. Both the objective physical structure and the method of operation of the grenade are not different from a welding torch.

 The white phosphorus grenades are quite different. While they produce smoke and while they have incendiary and illuminating effects, the evidence shows unmistakably that these grenades were specifically designed for use in military combat and the design criteria for the WP/M34 specifically considered the casualty-producing effect as a requirement for them. The evidence shows that there are other devices used by the military to produce smoke for signalling and screening without the casualty-producing effects of the white phosphorus grenades. The WP/M34, like a Molotov cocktail, produces indiscriminate and uncon-

trolled destruction when its power is released. See *United States v. Cruz,* 492 F.2d 217 (2d Cir.), *cert. denied,* 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974).

Upon the evidence before me, I find and conclude that the prosecution has proven beyond a reasonable doubt that the twelve WP/M34 hand and rifle grenades possessed by the defendant Adam George Homa, Jr. in the State and District of Colorado on June 9, 1976, are destructive devices which are properly classified as firearms under 26 U.S.C. § 5845; that the grenades were not registered as required in the National Firearms Registration and Transfer Record; and that the defendant, therefore, is guilty of a violation of Title 26 U.S.C. §§ 5861(d) and 5871, as charged in Count III of the indictment herein. Accordingly, it is,

ORDERED and ADJUDGED that the defendant is guilty as charged in Count III of the indictment, and that the entry of judgment is deferred pending a completion of the pre-sentence investigation and report.