# United States Court of Appeals
## For the First Circuit

---

No. 00-1215

UNITED STATES OF AMERICA,
Plaintiff, Appellant,

v.

15 BOSWORTH STREET,
Defendant.

---

HENRY T. KONICK AND DELORES KONICK,
Claimants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

---

Before

Selya and Stahl, Circuit Judges,

and Lisi,* District Judge.

---

Shelbey D. Wright, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellant.
Roger Witkin for appellees.

---

January 4, 2001

---

_____
*Of the District of Rhode Island, sitting by designation.

**SELYA, Circuit Judge.** In this forfeiture action, the United States sought to seize a structure housing a tavern in which drug dealers had set up shop. The building was owned by a married couple, Henry and Delores Konick. They answered the complaint and filed a claim to the property, asserting that they neither knew of the drug trafficking nor had given their imprimatur to it. The district court ruled in the claimants' favor.

The government appeals, arguing that the court impermissibly eased the claimants' burden of proving their "innocent owner" defense. We agree that the district court erred, but we fear that the court's comments about the burden of proof, voiced at various stages of the bench trial, may have lulled the claimants into a false sense of security. To guard against that possibility, we vacate the judgment and remand for further proceedings before a new trier.

## I. BACKGROUND

In 1981, the claimants purchased the land and building located at 15 Bosworth Street, Boston, Massachusetts (the Property). The Property comprises a three-story brick frame structure with entrances on both Bosworth and Bromfield Streets. It houses three businesses: a delicatessen, a jewelry store, and Ye Olde Province Tavern (colloquially known as Hanks Bar).

-3-

The delicatessen and the jewelry store share the entrance at 53-55 Bromfield Street.

The tavern, which operates on the second floor of the building, has its own entrance at 15 Bosworth Street. Its public area consists of an open space with tables and an L-shaped bar. Delores Konick is the president of the corporation that holds the liquor license for the premises, and the Konicks' son Stephen is the treasurer and clerk.

The Boston police began investigating Hanks Bar in 1995. Their probe revealed evidence of gambling and a flourishing trade in stolen goods. Although the police hierarchs eventually decided not to press charges, the officers supervising the investigation repeatedly warned Henry Konick that they would not tolerate continued illicit activity on the premises.

These admonishments did little good. In a matter of months, the authorities began to receive anonymous tips that a different type of criminal conduct had reared its head. The informants suggested that the claimants' sons Ronald and Robert (who were, respectively, the day manager and the night manager of Hanks Bar) were trafficking in controlled substances. The suspicions generated by this suggestion intensified when, on December 1, 1997, two patrons overdosed on heroin in the bar's

restroom. The police responded to the ensuing emergency call and recovered six glassine bags coated with heroin residue. Following this incident, the municipal licensing board held a series of hearings. Stephen, Ronald, and Robert Konick all testified and offered solemn assurances that they were exercising due vigilance to prevent drug use on the Property.

In 1998, the Boston police launched a covert investigation. An undercover detective became a "regular" at the tavern and, over an eight-month interval, bought drugs there on approximately twenty-five occasions. These transactions included purchases of cocaine and other controlled substances from Robert Konick and two other members of the tavern's work force. On August 14, 1998, matters reached a predictable climax; police officers executed a search warrant at the premises and recovered a substantial quantity of cocaine, along with marijuana, codeine, and sundry drug paraphernalia. Three employees of the tavern, including Robert Konick, were charged criminally and eventually convicted.

On November 2, 1998, the United States commenced a forfeiture action in which it alleged that the Property had been used, or was intended for use, to distribute narcotics in

violation of 21 U.S.C. § 856(a),[1] and thus was forfeitable under 21 U.S.C. § 881(a)(7). The following day, the district court authorized the filing of a notice of lis pendens. The Konicks opposed the petition for forfeiture and timely filed a claim to the Property.

The case was tried to the court. The government presented testimony from two law enforcement officers (including the detective who had infiltrated the bar). This testimony clearly established that the Property had been used over a substantial period of time for the unlawful distribution of controlled substances. Neither witness, however, made much mention of the claimants.[2] When the United States completed its case in chief, the district court denied the claimants' motion

---

[1]This statute renders it unlawful to —

        (1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;
        (2) manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 856(a).

[2]The undercover detective did testify that Henry Konick was present at the bar on at least two occasions, but he could not say definitively whether or not Konick was on the premises when particular drug sales were consummated.

for judgment as a matter of law.  After a brief recess, the claimants rested without calling any witnesses.  The court entertained arguments and then found that the claimants had proved by a preponderance of the evidence that they neither knew about, nor had consented to, the commission of any proscribed act on the Property.  The court entered judgment accordingly. This appeal ensued.

## II.  THE STANDARD OF REVIEW

When a district court conducts a bench trial, its legal determinations engender de novo review.  Smith v. F.W. Morse & Co., 76 F.3d 413, 420 (1st Cir. 1996).  This includes its determinations about the sufficiency of the evidence.  Sierra Fria Corp. v. Evans, 127 F.3d 175, 181 n.2 (1st Cir. 1997).  In contrast, the court's factual findings are entitled to considerable deference.  Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990).  This deference comports with common sense:  a judge, sitting jury-waived, has the opportunity to see and hear the witnesses at first hand and to immerse himself in the nuances of the proof.  Consequently, the appellate process ought to respect the trial judge's superior "feel" for the case and his enhanced ability to weigh and evaluate conflicting evidence.  Anderson v. City of Bessemer City, 470 U.S. 564, 574-75 (1985).

-7-

We hasten to add that respect does not mean blind allegiance. Despite the deference due, an appellate court will displace factual findings made in the aftermath of a bench trial if those findings are clearly erroneous. Jackson v. United States, 156 F.3d 230, 232-33 (1st Cir. 1998); Fed. R. Civ. P. 52(a). Moreover, when a trial court bases its findings of fact on an inaccurate appraisal of controlling legal principles, the rationale for deference evaporates entirely. See Vinick v. United States, 205 F.3d 1, 6-7 (1st Cir. 2000); Johnson v. Watts Regulator Co., 63 F.3d 1129, 1138 (1st Cir. 1995).

We append one final observation. When doubt arises, the duty to determine whether the "clearly erroneous" standard applies in a particular case lies with the court of appeals, not with the district court. Just as litigants cannot evade the clearly erroneous standard by relabelling issues of fact as issues of law, e.g., Johnson, 63 F.3d at 1138, so too a trial judge may not insulate a decision from plenary review by characterizing a determination of law as a factual finding.

With this prelude, we proceed to analyze the decision below. In the course of that analysis, the relevance of the preceding discussion will become apparent.

III. ANALYSIS

Congress has devised a mechanism for civil forfeiture of assets and property used in connection with certain drug violations. See 21 U.S.C. § 881. Insofar as real estate is concerned, the statute authorizes the forfeiture of:

> All real property, including any right, title, and interest . . . in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, [certain drug violations], except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Id. § 881(a)(7). It is this provision that the government invoked against the Property.

In section 881(a)(7) cases, as in all civil forfeiture cases brought pursuant to section 881, the customs laws dictate the progression of proof. See id. § 881(d) (mandating reference to the customs laws); 19 U.S.C. § 1615 (codifying relevant provisions of the customs laws). In practice, then, if the United States brings a forfeiture action against a parcel of real estate and a person claiming an interest in the real estate chooses to contest the forfeiture, the government bears the burden of demonstrating probable cause to support a belief that a nexus existed between the real estate and some specified

-9-

illegal activity sufficient to justify forfeiture. United States v. One Parcel of Real Property (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992); United States v. Parcel of Land (28 Emery St.), 914 F.2d 1, 3-4 (1st Cir. 1990); United States v. Parcels of Real Property (1933 Commonwealth Ave.), 913 F.2d 1, 3 (1st Cir. 1990). Once the government carries its relatively modest burden of showing probable cause, the devoir of persuasion shifts to the claimant, who must refute the government's prima facie case in one of two ways: either (1) by demonstrating that the property was not in fact used for the specified illegal activity, or (2) by proving that she (the claimant) neither knew about, nor consented to, the illicit activity. Great Harbor Neck, 960 F.2d at 204. The second of these avenues is commonly called the "innocent owner" defense.

In a civil forfeiture case, lack of knowledge or consent is an affirmative defense. See United States v. One Parcel of Property (121 Allen Pl.), 75 F.3d 118, 121 (2d Cir. 1996); United States v. Parcel of Land (18 Oakwood St.), 958 F.2d 1, 4 (1st Cir. 1992). Thus, the claimant bears the burden of proving the absence of knowledge or consent by a preponderance of the evidence. Great Harbor Neck, 960 F.2d at

-10-

204; see also United States v. One Lot of U.S. Currency ($68,000), 927 F.2d 30, 32 (1st Cir. 1991).

The instant appeal plays out against the backdrop of this progression of proof. Here, however, the claimants do not contest that the government satisfied its burden of showing that it had probable cause to believe that the Property was subject to forfeiture. The case turns, then, on the persuasiveness of the claimants' contention that they established, by a fair preponderance of the evidence, that they were innocent owners, that is, that the illicit activity conducted on the premises transpired without their knowledge or consent.

We have read the record with care and find it to be barren of any evidence that would permit a reasoned resolution of the question of the Konicks' knowledge or consent. We are constrained to conclude, therefore, that the lower court took an empty record (a record which, as a matter of law, contains inadequate evidence to ground a finding concerning the innocence of the owners), gave lip service to the accepted allocation of the burden of proof, and effectively inverted that burden. That constitutes reversible error: after all, it is a bedrock rule that when there is insufficient evidence on a particular issue, that issue must be resolved against the party who bears the burden of proof. See NLRB v. Louis A. Weiss Mem'l Hosp., 172

F.3d 432, 446 (7th Cir. 1999); United States v. Certain Real Property (566 Hendrickson Blvd.), 986 F.2d 990, 995 (6th Cir. 1993); cf. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (holding that the party who bears the burden of proof on a particular issue may not rely on the absence of competent evidence on that issue to defeat summary judgment). Even when the burden is to prove a negative — here, the lack of knowledge or consent — the absence of evidence on the issue redounds to the detriment of the burden-holder. E.g., Otero v. Buslee, 695 F.2d 1244, 1248-49 (10th Cir. 1982); Martinez v. E.J. Korvette, Inc., 477 F.2d 1014, 1016-17 (3d Cir. 1973).

The claimants attempt to fend off this conclusion in two principal ways. First, noting that the district court called its holding a factual determination, they proceed to clasp the standard of review as if it were a life preserver. But this argument sinks under its own weight. When nomenclature diverges from substance, substance controls. See Johnson, 63 F.3d at 1138. It would bring a Kafkaesque quality to the adjudication of cases if trial courts could inoculate themselves against meaningful appellate review by the simple expedient of creative labelling. We reject that notion. The dispositive question here is whether the evidence was sufficient, as a matter of law, to permit a finding on the innocence vel non of

-12-

the owners — and the district court's answer to that question is not entitled to deference.

Next, the claimants posit that it is not always necessary for the burden-holder to present witnesses in order to establish an affirmative defense. As an abstract proposition, that is true. E.g., United States v. Scout, 112 F.3d 955, 960 (8th Cir. 1997) (explaining that a criminal defendant can prevail on an affirmative defense of insanity without calling witnesses); United States v. Dalpiaz, 527 F.2d 548, 552 (6th Cir. 1975) (holding that a party carried the burden of proving his affirmative defense by cross-examining the adverse party's witnesses). In most cases, however, the proponent of an affirmative defense will have to supply evidence to sustain that defense. This case is of that genre: the testimony of the government's witnesses, even if taken in the light most favorable to the claimants, fails to furnish a sufficient foundation for a finding that the claimants satisfied their burden of proof. We explain briefly.

There is no direct evidence pertaining to the affirmative defense; neither claimant took the stand to deny knowledge or consent, and the record contains no disclaimers from them. Nor is there sufficient circumstantial evidence to prove the point. The only testimony is that of the government's

witnesses.  The most that this testimony proved was that the drug transactions involving the undercover operative occurred in the claimants' absence.  This information alone cannot sustain the claimants' burden of proof.

The decisive issue in this case involves whether the claimants knew about, or gave their consent to, drug sales that took place over an eight-month span.  While proof of personal observation of particular transactions would constitute competent evidence of knowledge and perhaps found an inference of consent, lack of personal observation proves relatively little.  Apart from observation, knowledge and consent can come about in myriad other ways.  For example, property owners might know about ongoing criminal activity through conversations with the participants, or by involvement in ancillary matters (e.g., financing the acquisition of the contraband), or from third parties who seek to inform them of what is happening on their premises.  The possibilities are virtually endless.  Seen from that perspective, the record falls far short of furnishing an adequate basis for a finding that the claimants proved their innocence.[3]

---

[3]Indeed, the scanty circumstantial evidence contained in the record points in the opposite direction.  Two notorious near-fatal drug overdoses had occurred in the bar.  Moreover, the undercover investigation that led to the forfeiture action followed on the heels of a police inquiry during which the

-14-

We summarize succinctly. The government proved its prima facie case. The burden then shifted to the claimants to sustain their innocent owner defense. Because the record, taken in the light most favorable to the claimants, contains insufficient evidence to permit a reasonable finder of fact to conclude that the claimants had proved a lack of knowledge or consent, the judgment in their favor cannot stand.

## IV. CONCLUSION

In the majority of cases, a finding that the evidence was insufficient as a matter of law to support an owner's claim of innocence will result in reversal and the entry of judgment for the opposing party. See, e.g., 566 Hendrickson Blvd., 986 F.2d at 995 ("It is well settled that the government is entitled to a judgment of forfeiture upon an unrebutted showing of probable cause."). Here, however, we think that fairness dictates a somewhat different course. Throughout the trial, the district court persistently implied that the affirmative defense would carry the day unless the United States adduced some evidence that the claimants knew or consented to the ongoing drug sales.[4]

---

authorities warned Henry Konick in no uncertain terms about criminal activity on the premises.

[4]For example, before the claimants decided to rest, the court stated: "I think I better ask the government, what

-15-

Trial lawyers pay attention to judges, and rightly so. In this instance, there is a considerable risk that the judge's comments led the claimants' attorney astray, inducing him to rest without presenting any evidence. This possibility suggests to us that, in the interests of justice, the claimants ought to be afforded an opportunity to offer evidence in support of their assertion of innocence.[5] Accordingly, we vacate the judgment and remand for a new trial before a new trier. In that proceeding, the newly-assigned judge may, if he or she so elects, take the government's case in chief on the record heretofore established, or in the alternative, may require the government to introduce

_____

evidence is there, even on the low standard of probable cause, which indicates that Hank Konick was aware on the two occasions that he was present that a drug transaction occurred?" The court then directly challenged the government to point to positive evidence that Henry Konick knew about the drug transactions: "What you're asking me is to forfeit real estate [worth] an awful lot of money [and] I'm asking you to show me on the record of this case any evidence as to Henry Konick's knowledge or consent of drug transactions." On yet another occasion, the court told the prosecutor straightforwardly that the "ultimate question that you have to support is . . . that Henry Konick had any relationship with any drug transactions that might have taken place on those days." (Emphasis supplied.)

[5]To be sure, lawyers have an independent responsibility to know the law, and we sometimes have refused to rescue parties whose attorneys arguably were misled by a judge. E.g., McGrath v. Spirito, 733 F.2d 967, 968-69 (1st Cir. 1984). However, the case at hand has special qualities: the judge was presiding over a bench trial, his comments were persistent, the claimants have much at stake, and any possible harm easily can be undone.

-16-

its evidence anew.  In either event, the court shall afford the claimants an opportunity to present evidence in support of their affirmative defense.

**So ordered**.