**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth Russell PEARCE,**
**Defendant–Appellant.**

No. 03–1456.

United States Court of Appeals,
Sixth Circuit.

Feb. 5, 2004.

920

Brian P. Lennon, U.S. Attorney's Office for the Western District of Michigan, Grand Rapids, MI, for Plaintiff–Appellee. Paul L. Nelson, Federal Public Defenders Office, Western District of Michigan, Grand Rapids, MI, for Defendant–Appellant.

Before BATCHELDER, GIBBONS, and COOK, Circuit Judges.

### ORDER

Kenneth Russell Pearce appeals his judgment of conviction and sentence for possessing an unregistered destructive device. The parties have waived oral argument. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Pearce was tried to a jury on charges of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possessing an unregistered destructive device (pipe bomb) in violation of 26 U.S.C. § 5861(d). Pearce moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29 at the close of the government's case-in-chief. The district court denied that motion, and the jury subsequently found Pearce guilty on both charges. The district court sentenced Pearce to seventy-eight months of imprisonment and three years of supervised release.

On appeal, Pearce reasserts that the government's evidence was insufficient to find him guilty of possessing an unregistered destructive device.

Initially, we note that Pearce does not appeal his judgment of conviction and sentence for being a felon in possession of a firearm. Therefore, this claim is considered abandoned and will not be reviewed. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir.1991); *McMurphy v. City of Flushing*, 802 F.2d 191, 198–99 (6th Cir. 1986).

The district court's denial of a motion to acquit is a legal question this court reviews de novo. *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir.1996) (citing *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir.1990)). The court must consider all of the evidence in the light most favorable to the prosecution, and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although we conduct a de novo review, review of the sufficiency of the evidence is quite limited. *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir.1992) (en banc).

The record reveals that FBI agents searched Pearce's home and storage locker. In the storage locker, they found and seized nineteen firearms, a variety of firearm parts, and thousands of rounds of ammunition. They also seized black gun powder, smokeless gun powder, fireworks with fuses, two commercial blasting caps, one military blasting cap, railroad torpe-

does, and a segment of metal pipe with two end caps and a hole drilled into the middle of the pipe. At trial, experts testified that the segment of capped and drilled pipe, when filled with either the black powder or the smokeless powder seized from Pearce's storage locker and ignited, would constitute a pipe bomb. One of the expert witnesses testified that Pearce could have assembled a pipe bomb from the component parts found in his storage locker in a matter of minutes. That same expert even created replica devices of the pipe segment, and detonated them. The search of Pearce's home revealed a book entitled *The Poor Man's James Bond,* which describes bomb-making techniques.

Pearce does not contest that he possessed the device; nor does he suggest that the device was properly registered. Rather, Pearce argues that the government failed to produce sufficient evidence that the combination of items found in his storage locker (gun powders, fuses, blasting caps, and the capped and drilled pipe segment) was either designed or intended for use as a destructive device. In other words, Pearce argues that he had no intent to use otherwise innocent items found in his storage locker as a weapon, and that the items were not designed to be used as a destructive device. While the record does not clearly reveal what Pearce intended to do with the segment of pipe, when police officers asked him about the pipe segment and whether he had ever had a pipe bomb, Pearce responded, "What else are you going to use if you can't get dynamite?" His comment suggests his intent to use the pipe segment as a pipe bomb.

■ Moreover, Pearce's intended purpose for the pipe segment is irrelevant. *See United States v. Dalpiaz,* 527 F.2d 548, 551 (6th Cir.1975). The definition of firearm in 26 U.S.C. § 5845(a) includes a "destructive device." That term is dealt with or defined in three different subsections. Under subsection (f)(1) such a device encompasses bombs, grenades, rockets, missiles, mines, and similar devices. Subsection (f)(2) deals with large-bore weapons other than sporting guns. Subsection (f)(3) includes "any combination of parts either *designed or intended* for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled." 26 U.S.C. § 5845(f)(3) (emphasis added). The word "designed" in this context refers to the objective, physical structure or method of operation and not to the intent or schemes of the possessor. *Id.* Thus, it is sufficient for the government to show that the device was readily convertible to a destructive device. *See United States v. Langan,* 263 F.3d 613, 625 (6th Cir.2001). Our review of the record reveals that the government met that showing.

Therefore, when we consider all of the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319.

Accordingly, we hereby affirm the district court's judgment.